**Ronald Lynn SCOTT, Jr., Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 82A04–0802–CR–85.

Court of Appeals of Indiana.

Oct. 28, 2008.

Matthew Jon McGovern, Evansville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Zachary J. Stock, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE[1]

Appellant–Defendant, Ronald Lynn Scott, Jr. (Scott), appeals the trial court's finding that he is a sexually violent preda-tor pursuant to Indiana Code section 35–38–1–7.5.

We affirm.

### ISSUES

Scott presents one issue for our review, which we restate as the following two:

(1) Whether the trial court erred by failing to hold a hearing at which the court-appointed doctors could have been subjected to cross-examination and required to explain their conclusions with regard to Scott's alleged status as a sexually violent predator; and

(2) Whether the evidence is sufficient to support the trial court's finding that Scott is a sexually violent predator.

### FACTS AND PROCEDURAL HISTORY

Between November 1, 2006, and January 31, 2007, Scott, who was thirty-four or thirty-five years old at the time, had sexual intercourse multiple times with N.M., who was fourteen years old at the time. On March 26, 2007, the State filed an Information charging Scott with three counts of sexual misconduct with a minor, as a Class B felony, I.C. § 35–42–4–9(a)(1). On August 9, 2007, the State filed an enhancement alleging that Scott is a repeat sexual offender under Indiana Code section 35–50–2–14 based on a 1993 conviction for attempted child molesting.

On August 10, 2007, Scott and the State entered into a plea agreement by which Scott would plead guilty as charged to the three Class B felony counts of sexual misconduct with a minor, would register as a sex offender, and would receive the minimum sentence of six years for each count, with the terms to be served concurrently, and the State would dismiss the repeat

---

1. We issue this opinion along with *Williams v. State*, No. 47A05–0802–CR–101, 2008 WL 4711915, 895 N.E.2d 377 (Ind.Ct.App. Oct. 28, 2008).

sexual offender enhancement. In addition, the State would ask the trial court to have Scott evaluated for purposes of determining whether he is a sexually violent predator (or SVP) under Indiana Code section 35–38–1–7.5. On September 4, 2007, the trial court accepted the plea agreement and sentenced Scott accordingly, *i.e.*, to an executed prison sentence of six years. The trial court also appointed Dr. Thomas Liffick (Dr. Liffick), a psychiatrist, and Dr. David Cerling (Dr. Cerling), a psychologist, to evaluate Scott for purposes of the SVP determination.

On November 29, 2007, Dr. Liffick submitted a report to the trial court stating, among other things, that Scott suffers from antisocial personality disorder and "is significantly more likely than the average individual" to commit the sex and violent crimes listed in the SVP statutes. (Appellant's App. pp. 80–81). On December 12, 2007, Dr. Cerling submitted his report to the trial court, in which he concluded, among other things, that Scott suffers from impulse control disorder and presents "a moderate risk for future sexual offenses." (Appellant's App. p. 87). After Dr. Liffick and Dr. Cerling submitted their reports, Scott requested an evidentiary hearing at which the doctors could testify and be cross-examined. The trial court denied the request. On January 10, 2008, the trial court issued an order finding Scott to be a sexually violent predator. In its order, the trial court emphasized the doctors' reports, Scott's prior conviction for attempted child molesting, and Scott's lack of remorse for the three sexual misconduct offenses underlying the SVP proceeding.

Scott now appeals. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

On appeal, Scott challenges the trial court's finding that he is a sexually violent predator. In Indiana, whether or not a person is a sexually violent predator is a matter governed by statute, and our legislature significantly revised the relevant statutes in 2006 and 2007, with the last amendment going into effect on May 10, 2007. *See* P.L. 6–2006, § 5; P.L. 140–2006, §§ 13, 21, 41; P.L. 173–2006, §§ 13, 21, 55; P.L. 216–2007 §§ 12, 14, 37. In this case, Scott committed the sexual misconduct offenses underlying the trial court's SVP finding between November 1, 2006, and January 31, 2007, and he was sentenced on September 4, 2007, so there was some question at the trial court level as to which versions of the statutes were applicable to Scott. In the end, the trial court determined Scott's status "under the terms of the statutes in effect prior to the 2006, 2007 amendments." (Appellant's App. p. 36). Neither party challenges the trial court's decision as to the applicable statutes, so we will review the trial court's SVP finding in accordance with the same versions of the statutes.

Prior to the 2006 and 2007 amendments, Indiana Code section 35–38–1–7.5 (2004), the statute that generally governed sexually violent predator findings, provided, in pertinent part:

> (b) This section applies whenever a court sentences a person for a sex offense listed in IC 5–2–12–4(a)(1) through IC 5–2–12–4(a)(10) for which the person is required to register with the sheriff (or the police chief of a consolidated city) under IC 5–2–12–5.

Here, the trial court was sentencing Scott for three counts of sexual misconduct with a minor, as a Class B felony, which was one of the offenses that made a person eligible for a sexually violent predator finding. *See* I.C. §§ 5–2–12–4(a)(8) (2004), 5–12–12–5 (2004) (both repealed by P.L. 140–2006, § 41, and P.L. 173–2006, § 55).

As for the process of making a sexually violent predator finding, Indiana Code section 35-38-1-7.5(c) (2004) provided: "At the sentencing hearing, the court shall determine whether the person is a sexually violent predator," which at the time was defined as "an individual who suffers from a mental abnormality or personality disorder that makes the individual likely to repeatedly" commit certain enumerated sex or violent offenses. I.C. § 5-2-12-4.5 (2004) (repealed by P.L. 140-2006, § 41, and P.L. 173-2006, § 55). Indiana Code section 35-38-1-7.5(c) (2004) continued: "Before making a determination under this section, the court shall consult with a board of experts consisting of two (2) board certified psychologists or psychiatrists who have expertise in criminal behavioral disorders." If the court found that the person was a sexually violent predator, the person was required to register as a sex offender for life. I.C. §§ 35-38-1-7.5(d)(1) (2004), 5-2-12-13(b) (2004) (repealed by P.L. 140-2006, § 41, and P.L. 173-2006, § 55). Having outlined the applicable statutory framework, we now turn to Scott's contentions on appeal.

## I. Should the Trial Court Have Required the Doctors to Testify at a Hearing?

■ As one of his arguments on appeal, Scott asks that, pursuant to our recent opinion in *Marlett v. State*, 878 N.E.2d 860 (Ind.Ct.App.2007), *trans. denied*, we remand this cause to the trial court for the purpose of holding a hearing on his status as an SVP, at which Dr. Liffick and Dr. Cerling could be cross-examined and be required to explain their conclusions. We decline to do so.

In *Marlett*, when the defendant was seventeen years old, he put a knife to the neck of a sixteen-year-old girl who was a fellow student at his school. *Id.* at 863. He pled guilty to criminal confinement of a

person under eighteen by someone other than a parent or guardian, a crime that qualified him as a sex offender and made him eligible for an SVP finding. *Id.* at 870. The trial court appointed two doctors—one psychiatrist and one psychologist—to examine Marlett and to give their opinion as to whether he should be classified as an SVP. *Id.* at 871. Both doctors opined that Marlett qualified as an SVP, and the trial court found accordingly. *Id.* at 871-72. Marlett appealed, arguing that the doctors' opinions were too conclusory to support the trial court's finding. *Id.* at 871-72. He also complained about the fact that the State did not call the doctors to testify in person regarding their findings or to explain their reports. *Id.* at 872.

On appeal, we found Marlett's concerns regarding the conclusory nature of the reports and the failure of the experts to testify to be valid. *Id.* One of the doctors' reports concluded, "I, therefore, believe Mr. Marlett is at risk for repeating the offense and should be registered as a sexually violent predator." *Id.* We interpreted the doctor's use of the phrase "*the* offense" to mean that the doctor believed that Marlett was at risk for repeatedly confining minors. *Id.* "However," we noted, "the fact that Marlett confined a fellow high school classmate who was approximately the same age as him would not seem, by itself, to indicate such a propensity." *Id.* The second doctor concluded, "[I]t is my professional opinion that, after reviewing Court documents, interviews, and the results of psychological testing, [Marlett] should be classified as a Sexually Violent Predator[.]" *Id.* But, as we observed, "The report fails to identify any specific crime or crimes that Marlett allegedly is at risk of repeatedly committing." *Id.* In the end, we concluded that "[m]ore specificity would be especially helpful in a case like this, where Marlett

did not commit an overtly sexual crime." *Id.* As such, we remanded the cause to the trial court for a hearing, stating, "We would feel more comfortable reviewing a ruling that was made following . . . a hearing at which the experts who opined generally that Marlett is an SVP must testify and defend and explain their conclusions." *Id.*

Here, on the other hand, the doctors' reports were specific, not conclusory. Dr. Liffick provided a four-and-a-half-page report detailing Scott's sexual background, his 1993 conviction for attempted child molesting, his version of the events leading to the SVP proceeding, and his mental health history. He concluded:

> The question legally is whether Mr. Scott meets the criteria in Indiana statutory language for a "sexually violent predator". It is my opinion that he does suffer from a personality disorder and I think that it is a personality disorder that makes him likely to repeatedly engage in illegal activities. He has demonstrated over the span of the last 15 years (and perhaps somewhat before that) his predilection for acting out in sexually unacceptable ways. On two occasions this has led to a plea of guilty with respect to crimes listed in the statutory definition. The crux of the matter comes down to the definition of the word "likely" in the statute. *It is my opinion that Mr. Scott is significantly more likely than the average individual to engage in the offenses listed. The best predictor of future behavior is past behavior. Mr. Scott has on at least two occasions admitted to crimes listed in this statute. The increased likelihood of engaging in those prohibited behaviors in the future is at least partially the result of his personality disorder in my opinion.*

(Appellant's App. pp. 80–81) (emphasis added).

Likewise, Dr. Cerling provided a five-and-a-half-page report detailing Scott's family history, his childhood, his 1993 conviction for attempted child molesting, his employment history, his children, his criminal history, his sexual history, his substance abuse history, his account of the underlying offenses, and the risk assessment procedures used (the Rapid Risk Assessment for Sex Offender Recidivism (RRASOR), the Static 99, and the Sexual Violence Risk–20 (SVR–20)). Dr. Cerling concluded:

> Mr. Scott has pled guilty to three Class B felony counts of sexual misconduct with a minor. He has a history of a previous sexual offense with a minor that occurred about 15 years ago. At this time, [Scott] does not present with evidence of a major mental illness, such as major depression, bipolar disorder, schizophrenia, or a serious anxiety-related disorder. He certainly does present with a history indicating diagnoses of Polysubstance Abuse and Dependence, particularly with marijuana and meth-amphetamine. His history also reflects considerable problems with impulse control in terms of an unstable relationship with his children's mother, unstable employment patterns, and episodes of aggression, some of which have resulted in arrests. Certainly, a diagnosis of Impulse Control Disorder, NOS, would appear applicable. *In terms of this defendant's potential recidivism, the present evaluation suggests a moderate risk for future sexual offenses. Based on the actuarial rates of the RRASOR and the Static 99, individuals with risk factors such as [Scott], current published data indicates recidivism rates ranging from 11. 7 percent to 32.1 percent at 5 years, and from 18.2 percent to 37.6 percent at 10 years.*

(Appellant's App. pp. 86–87) (emphasis added).

It seems to us that the *Marlett* court's primary concern in remanding for a hearing was that the defendant was being labeled a sexually violent predator based on a single, non-sexual crime. We stated that "[m]ore specificity would be especially helpful in a case like this, *where Marlett did not commit an overtly sexual crime.*" *Marlett*, 878 N.E.2d at 872 (emphasis added). In this case, however, the doctors' reports were quite specific, and they were largely based on multiple crimes that *were* overtly sexual. As such, there is no need for the doctors to "testify and defend and explain their conclusions" at a hearing like the one we ordered in *Marlett*.[2]

## II.  *Sufficiency of the Evidence*

Scott argues that, even if the trial court did not err in refusing to hold an evidentiary hearing, we should reverse the trial court's SVP determination because it is not supported by sufficient evidence. The parties correctly note that we have not yet articulated the appellate standard of review of a trial court's sexually violent predator finding. However, we have at least suggested that it is a question of sufficiency of the evidence. *Marlett*, 878 N.E.2d at 868 n. 7. The State urges us to adhere to that general standard, and Scott does not argue otherwise in his reply brief. Applying that standard, then, we note that we will neither reweigh the evidence nor judge the credibility of the witnesses. *Henley v. State*, 881 N.E.2d 639, 652 (Ind.2008). We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence. *Id.* We will affirm the trial court's judgment if it is supported by substantial evidence of probative value. *See id.*[3]

---

2. We acknowledge that, under a 2007 amendment to Indiana Code section 35–38–1–7.5, such a hearing is now required in certain cases. *See* P.L. 216–2007, § 37. Here, however, the trial court applied the version of Indiana Code section 35–38–1–7.5 in effect prior to the 2006 and 2007 amendments, which included no provision for a hearing. *See* I.C. § 35–38–1–7.5 (2004). Scott does not challenge that decision on appeal, and for good reason: in addition to the provision for a hearing in some situations, the 2006 and 2007 amendments also provide for automatic SVP determinations in certain circumstances, including where, as with Scott, a person commits sexual misconduct with a minor as a Class B felony while having a previous unrelated conviction for attempted child molesting. *See* I.C. § 35–38–1–7.5(b)(2) (2008). In other words, if the trial court had applied the most recent version of Indiana Code section 35–38–1–7.5 to Scott's case, Scott would have qualified as a sexually violent predator as a matter of law. Scott apparently would have us apply the part of the amendments that benefits him—the provision calling for a hearing—but not the part of the amendments that would prejudice him—the provision calling for an automatic SVP determination. We

agree with the State that "[w]ithout advancing some authority or argument in support, [Scott] cannot maintain the contradictory claims that he is entitled to the operation of the old definition of a sexually violent [predator] while also benefiting from the new procedures for making that determination." (Appellee's Br. p. 7).

3. By citing a criminal case, we by no means intend to suggest that a sexually violent predator finding is subject to the "beyond a reasonable doubt" burden of proof. Nor do we hold that any other burden of proof, such as "clear and convincing evidence" or "preponderance of the evidence," applies. The legislature has not designated the applicable burden of proof, and the parties have not advocated for one. *Cf.* I.C. § 5–2–12–4 (2005) (calling for "clear and convincing" burden where juvenile is alleged to be a sex offender). For now, we simply stick to the "substantial evidence of probative value" standard, which applies in both criminal and civil cases. *See Henley*, 881 N.E.2d at 652; *Jamrosz v. Resource Benefits, Inc.*, 839 N.E.2d 746, 758 ("In reviewing the sufficiency of evidence in a civil case, we will decide whether there is substantial evidence

Scott's specific argument is that the evidence fails to prove that he is "likely" to repeatedly commit the enumerated sex or violent offenses, as required by the definition of "sexually violent predator." *See* I.C. § 5–2–12–4.5 (2004). This argument requires us to determine the meaning of the word "likely" in the statute. The primary goal of statutory interpretation is to give effect to the intention of the legislature. *Westbrook v. State,* 770 N.E.2d 868, 871 (Ind.Ct.App.2002). Words will be given their plain and ordinary meaning unless otherwise indicated by the statute. *Id.*

■ Scott asserts that the use of the word "likely" in the definition of "sexually violent predator" places the burden on the State to prove that he is more likely than not to reoffend, that is, that his chances of reoffending are greater than fifty percent. *See* I.C. § 5–2–12–4.5 (2004) (defining "sexually violent predator" as "an individual who suffers from a mental abnormality or personality disorder that makes the individual *likely* to repeatedly" commit certain enumerated sex or violent offenses) (emphasis added). There is some support for Scott's interpretation. Scott cites one dictionary that defines "likely," in part, as "having a better chance of existing or occurring than not[.]" Webster's Unabridged Third New International Dictionary 1310 (2002).

Nonetheless, we cannot agree with Scott that our legislature intended for the word "likely" to mean "more likely than not" or to require a greater than fifty percent chance. First, we are disinclined to impose a numerical or "more likely than not" standard where our legislature has not done so itself. When our legislature has intended to impose a "more likely than not" standard, it has done so in express terms. *See* I.C. § 26–1–5.1–109(b)(4) ("...

of probative value supporting the trial

the applicant is *more likely than not* to succeed under its claim of forgery or material fraud and the person demanding honor does not qualify for protection under subsection (a)(1)."); I.C. § 31–34–14–4(1)(C)(iii) ("... and the court finds that it is *more likely than not* that the child's testifying in the courtroom creates a substantial likelihood of emotional or mental harm to the child[.]"); I.C. § 31–35–5–4(1)(C)(iii) ("... and the court finds that it is *more likely than not* that the child's testifying in the courtroom creates a substantial likelihood of emotional or mental harm to the child[.]"); and I.C. § 35–37–4–8(e)(1)(B)(iii) ("... and the court finds that it is *more likely than not* that the protected person testifying in the physical presence of the defendant creates a substantial likelihood of emotional or mental harm to the protected person[.]").

Second, there are strong policy reasons for refraining from setting a precise numerical standard. The Massachusetts Supreme Court, in interpreting the word "likely" in that state's sexually dangerous person statute, concluded:

> While "likely" indicates more than a mere propensity or possibility, it is not bound to the statistical probability inherent in a definition such as "more likely than not," and the terms are not interchangeable. To conclude that "likely" amounts to a quantifiable probability, absent a more specific statutory expression of such a quantity, is to require mathematical precision from a term that, by its plain meaning, demands contextual, not statistical, analysis.

*Commonwealth v. Boucher,* 438 Mass. 274, 780 N.E.2d 47, 50 (2002). Likewise, the California Supreme Court, in analyzing that state's sexually violent predator statute, concluded that "[t]he word 'likely' ...

court's judgment."), *trans. denied.*

must be construed in light of the 'difficulties inherent in predicting human behavior, particularly in mathematical terms.'" *People v. Superior Court (Ghilotti)*, 27 Cal.4th 888, 119 Cal.Rptr.2d 1, 44 P.3d 949, 971 (2002) (quoting *Hubbart v. Superior Court*, 19 Cal.4th 1138, 81 Cal.Rptr.2d 492, 969 P.2d 584, 600–01 (1999)). The court went on to hold that a "person is 'likely' to reoffend if, because of a current mental disorder which makes it difficult or impossible to restrain violent sexual behavior, the person presents a *substantial danger*, that is, a *serious and well-founded risk*, that he or she will commit such crimes[.]" *Id.* at 972 (emphases in original).

■ In sum, we decline to read a "more likely than not" or precise mathematical standard into the word "likely" in Indiana's SVP statute. Instead, we borrow from the California Supreme Court and hold that, in Indiana, a person is "likely" to reoffend for purposes of the SVP statute if, because of a mental abnormality or personality disorder, the person presents a substantial danger, that is, a serious and well-founded risk, that he or she will commit the statutorily-enumerated sex or violent crimes in the future. *See Superior Court (Ghilotti)*, 119 Cal.Rptr.2d 1, 44 P.3d at 972.

■ Applying the "substantial danger/serious and well-founded risk" standard to the case at hand, we observe that Dr. Cerling, a psychologist, reported to the trial court that Scott presents only "a moderate risk for future sexual offenses," with "recidivism rates ranging from 11.7 percent to 32.1 percent at 5 years, and from 18.2 percent to 37.6 percent at 10 years." (Appellant's App. p. 87). We acknowledge that Dr. Cerling's conclusions do not provide overwhelming support for the trial court's SVP finding. However, we need not decide today whether they could, standing alone, support a trial court finding that a defendant presents a "substantial danger" and a "serious and well-founded risk" of reoffending. Even if we were to construe Dr. Cerling's report as concluding that Scott should *not* be classified as a sexually violent predator (Dr. Cerling did not actually reach a conclusion one way or the other), the trial court also had the benefit of Dr. Liffick's report and knowledge of Scott's prior conviction for attempted child molesting. We have previously held that a trial court's SVP finding was supported by the defendant's prior child molesting conviction and one doctor's opinion, notwithstanding the fact that the other doctor opined that the defendant should not be classified as a sexually violent predator. *Westbrook*, 770 N.E.2d at 871.

Here, Dr. Liffick concluded that Scott suffers from antisocial personality disorder and that he "is significantly more likely than the average individual to engage in the offenses listed." (Appellant's App. p. 80–81). Dr. Liffick added that "[t]he best predictor of future behavior is past behavior. Mr. Scott has on at least two occasions admitted to crimes listed in this statute." (Appellant's App. p. 81). In addition to Dr. Liffick's report, the trial court itself noted that Scott lacks remorse for the sexual misconduct crimes underlying the sexually violent predator finding. "Lack of remorse may be an underlying consideration in determining the risk that the defendant will commit another crime[.]" *Coleman v. State*, 409 N.E.2d 647, 651 (Ind.Ct.App.1980). Finally, the trial court was aware of Scott's current offenses and his 1993 conviction for attempted child molesting. In accordance with *Westbrook*, we conclude that Dr. Liffick's report and Scott's multiple sex-related convictions, along with Scott's lack of remorse for his crimes, support the trial court's finding that Scott is a sexually vio-

lent predator under Indiana Code section 35–38–1–7.5 (2004).

### CONCLUSION

Based on the foregoing, we conclude that (1) the trial court did not err in failing to hold a hearing requiring the doctors to explain their conclusions regarding Scott's alleged status as a sexually violent predator and (2) the evidence is sufficient to support the trial court's finding that Scott is a sexually violent predator.

Affirmed.

BAILEY, J., and BRADFORD, J., concur.