**Kirby D. EDWARDS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 18A02–1102–CR–118.**

Court of Appeals of Indiana.

Sept. 2, 2011.

---

Amanda C. Dunnuck, Public Defender's Office, Muncie, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ann L. Goodwin, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Kirby D. Edwards appeals the trial court's determination that he is a sexually violent predator ("SVP").

We affirm.

### ISSUE

Whether the trial court erred by determining that Edwards is a SVP.

### FACTS

On September 10, 2008, Edwards downloaded, on his computer, digital and video images that depicted children, who appeared less than sixteen years old, engaging in sexual conduct. The State charged Edwards with three counts of class C felony child exploitation and three counts of class D felony possession of child pornography.

In January 2009, the State filed a motion requesting the trial court to move Edwards from the Delaware County Jail to the Department of Correction "for safekeeping" based on Edwards' suicide attempts and ideation and his "refusal to abide by the jail rules." (App.31). The motion indicated that transport to the Department of Correction was necessary to "insure the safety and security of the Defendant, the other inmates and the Jail Staff." (App.31). The trial court granted the State's motion and ordered that Edwards be transported to the Department of Correction.

On August 12, 2009, the State and Edwards entered into a written plea agreement under which Edwards agreed to plead guilty to one count of class C felony child exploitation in exchange for the State's dismissal of the five remaining charges. The parties also agreed that any sentence imposed by the trial court should be capped at five years. That same day, Edwards pled guilty to one count of child exploitation, indicating that he had downloaded and shared photographs of children under the age of sixteen engaged in sexual conduct. The trial court took the plea under advisement and ordered that a presentence investigation report ("PSI") be prepared for sentencing.

In the PSI, Edwards reported that he had previously been investigated for two allegations of child molestation, one in 1991 involving his then five-year-old daughter and one in 2000 involving his then five-year-old son. Edwards further reported that he gave up his parental rights to his daughter and that no charges were filed in either case. In regard to the child exploitation charge to which Edwards had pleaded guilty, the PSI indicated that Edwards had downloaded several hundred pornographic photographs of prepubescent females. According to the probable cause

affidavit, which was attached to the PSI, Edwards initially told an investigating police officer that he did not have a problem with child pornography but later admitted that he had child pornography on his computer and that he had gotten sexually aroused by viewing photographs of underage girls in sexual situations.

On August 13, 2009, the State filed a petition, pursuant to Indiana Code section 35–38–1–7.5(e), requesting the trial court to order evaluations and conduct a hearing to determine whether Edwards was a SVP. The trial court granted the State's motion and appointed two doctors—psychiatrist, Rebecca Mueller, M.D. and psychologist, Frank Krause, Ph.D.—to evaluate Edwards as to whether he should be classified as a SVP.

On August 26, 2009, Dr. Mueller and Dr. Krause interviewed and evaluated Edwards at the Delaware County Jail. Edwards, who was still being housed at the Department of Correction for safekeeping, was transported to the jail for the interviews. Dr. Mueller and Dr. Krause met with Edwards at the same time but posed their own questions to Edwards and conducted their own evaluation. Dr. Krause met with Edwards an additional time at the jail on September 8, 2009 and administered some psychometric tests.

■ Dr. Mueller filed her evaluation with the trial court on September 4, 2009. Dr. Mueller's report contained details on her clinical interview with Edwards as well as his psychiatric, medical, social, legal, and substance abuse history. In the interview, Edwards reported that he was re-ceiving Social Security benefits for bipolar disorder, post-traumatic stress disorder, and paranoid schizophrenia. Dr. Mueller's report indicated that, during the interview, Edwards admitted that he had been accused of molesting his daughter and sodomizing his son but stated that he was never charged or arrested in relation to those allegations. The report also indicated that Edwards was aware of the child exploitation charge against him for downloading child pornography but that he claimed that had accidently downloaded it. Dr. Mueller diagnosed Edwards with bipolar disorder and concluded that Edwards should be classified as a SVP. Dr. Mueller's report contained the following clinical impression:

> Mr. Kirby Edwards demonstrates by history, not current, some symptoms that would be consistent with a Bipolar illness. He has exhibited some suicidal actions as of January 2009. If you look at his past psychiatric treatment it points toward a diagnosis of Bipolar Disorder. He has two prior accusations of child molestation and now an offense of child exploitation regarding computer oriented child pornography. He may have a psychiatric disorder but at the time of the offense he was mentally stable. He used poor judgment in downloading repeatedly from the child pornography site but that was not a manifestation of Bipolar Disorder. He is a sexually violent predator.

(Green App. 62).[1]

Dr. Krause filed his evaluation on September 14, 2009. During the interview,

---

1. One exception to the mandatory statutory confidentiality of a report of a physical or mental examination is "upon specific authorization by the court and the convicted person." Ind.Code § 35–38–1–13(b). This statutory confidentiality is referenced by Indiana Administrative Rule 9(G)(1)(b)(xi). But case record information excluded from public access "may be made accessible if the information is declared by a court with jurisdiction over the case to be essential to the resolution of litigation." Ind. Admin. R. 9(G)(3). Because the defendant in this appeal is challenging his SVP determination and particularly

Edwards reported that he had been prescribed an anti-depressant for the treatment of bipolar disorder and post-traumatic stress disorder. As part of his evaluation, Dr. Krause administered various psychometric instruments and questionnaires, including the Personality Assessment Inventory (PAI), the Minnesota Sex Offender Screening Tool—Revised (MnSOST–R), the Rapid Risk Assessment For Sexual Recidivism (RRASOR), and the Sex Offender Risk Appraisal Guide (SORAG). Dr. Krause's report explained his findings in relation to the PAI but did not give specific scores or findings regarding the MnSOST–R, RRASOR, and SORAG. Dr. Krause diagnosed Edwards with dysthymic disorder, pedophilia, post-traumatic stress disorder, intermittent explosive disorder, and antisocial personality disorder and recommended that Edwards be classified as a SVP.[2] Specifically, Dr. Krause's report concluded:

> In addition to the fact that on the Affidavit of Probable Cause For Arrest Without Warrant, Mr. Edwards admitted that ... "he has gotten sexual arousal from looking at pictures of underage girls in sexual situations that he knew was wrong," he also has a mental abnormality (Pedophilia) and a personality disorder (301.7 Antisocial Personality Disorder) that makes him likely to repeatedly engage in any of the offenses described in I.C. 11–8–8–5.[3]

> Therefore, it is my professional opinion that after reviewing Court documents, interviews, and results of psychological testing, Mr. Edwards should be classified as a sexually violent predator as defined in I.C. 35–38–1–7.5.

(Green App. 68).[4]

Edwards' sentencing/SVP hearing, which was originally set for September 23, 2009, was postponed for various reasons, including continuances by Edwards and the State and the unavailability of Drs. Mueller and Krause to appear at the hearing. On March 9, 2010, Edwards filed a motion to withdraw his guilty plea. Thereafter, the State and Edwards entered into an amended plea agreement in which Edwards agreed to plead guilty to the three counts of class D felony possession of child pornography in exchange for the State's dismissal of the three remaining class C felony child exploitation counts and agreement to a five-year sentencing cap.

The trial court held a change of plea hearing on June 9, 2010.[5] During this hearing, the trial court rejected Edwards' original plea agreement, and Edwards pled guilty to the three counts of possession of

---

the manner in which the trial court considered information in the psychiatric and psychological reports of the doctors who evaluated him regarding the SVP classification, we authorize and declare publicly accessible the doctors' report information discussed in this opinion. *See J.S. v. State*, 928 N.E.2d 576, 578, n. 4 (Ind.2010); *Malenchik v. State*, 928 N.E.2d 564, 566, n. 2 (Ind.2010).

2. Dr. Krause's report indicates that his diagnoses were based on the "DSM IV–TR" or the Diagnostic and Statistical Manual of Mental Disorders, 4th ed. Text Revision.

3. The prior version of the SVP statute referred to sex offenses listed Indiana Code

section "11–8–8–5." *See* I.C. § 35–38–1–7.5 (2006). In 2007, the SVP statute was amended and now refers to sex offenses listed in Indiana Code section "11–8–8–5.2[,]" which then refers to the sex offenses listed in Indiana Code section 11–8–8–4.5. *See* I.C. § 35–38–1–7.5; Pub. L. No. 216–2007, § 37. However, the offenses listed under both section 4.5 and section 5 of Indiana Code chapter 11–8–8 are the same.

4. *See* fn. 1.

5. This hearing was also delayed after Edwards filed multiple continuances.

child pornography. The trial court took the amended plea under advisement and set the sentencing/SVP hearing for August 18, 2010. The parties agreed that Dr. Mueller and Dr. Krause could testify telephonically at the hearing. Upon a motion by Edwards, the trial court ordered that Edwards could have funds to hire his own psychiatrist, Dr. George F. Parker. Dr. Parker reviewed the evaluation reports of Dr. Mueller and Dr. Krause but did not meet with or interview Edwards.

The trial court held the sentencing/SVP hearing on December 22, 2010, January 5, 2011, and January 19, 2011, during which Dr. Mueller, Dr. Krause, and Dr. Parker testified. During the hearings, Dr. Krause and Dr. Mueller discussed their evaluation reports and testified that Edwards should be classified as a SVP. Edwards' counsel cross-examined Dr. Krause and Dr. Mueller regarding their diagnoses and whether their evaluations were independently conducted. Edwards also called Dr. Parker as a witness in an effort to impeach the evaluation reports of Dr. Krause and Dr. Mueller. Dr. Parker did not give an opinion of whether Edwards should be classified as a SVP.

Specifically, during the SVP hearing, Dr. Krause testified that he had conducted over 100 SVP evaluations. He generally discussed the factors that led him to diagnose Edwards with dysthymic disorder, pedophilia, and intermittent explosive disorder. Dr. Krause testified that "[i]t [was his] opinion, again, that [Edwards] should be classified as, because of his mental disease or defect, he should be classified as a sexually violent predator." (Tr. 33). Additionally, Dr. Krause testified that Edwards had "acted out and there [was] a probability he'[d] act out again." (Tr. 41–42). Dr. Krause testified that pedophilia was the mental abnormality most associat-

ed with recidivism in sex offenders but pointed out that Edwards' diagnosis of intermittent explosive disorder could not be overlooked because he had a lack of impulse control. During Edwards' attorney's cross-examination of Dr. Krause regarding the basis for his pedophilia diagnosis, the doctor indicated that the diagnosis was based on Edwards' guilty plea, the fact that Edwards had been charged with six sex-related offenses as contained in charging information, and the probable cause affidavit in which a police officer reported that Edwards had stated that he had been sexually aroused by underage girls in sexual situations. The doctor also indicated that his decision to recommend that Edwards be classified as a SVP was based in part on "an obligation to protect . . . the community." (Tr. 40). Edwards' counsel also cross-examined Dr. Krause on the fact that his evaluation report did not include specific test results from the various sex offender recidivism instruments. Dr. Krause acknowledged that the specific test results were not in the report but suggested that they were incorporated into it. During cross-examination, Dr. Krause was unable to locate Edwards' specific results from the RRASOR and stated that he did not want to answer general questions about that test without having it in front of him.[6]

Dr. Mueller testified that she has done over fifty SVP evaluations and that she had special expertise in the area of bipolar disorders. She explained her opinion that Edwards should be classified as a SVP was based on his mental abnormality of bipolar disorder and indicated that he had had several "quite lethal" suicide attempts, "psychotic thinking[,]" and a history of "impaired reality testing" during his life. (Tr. 77). Dr. Mueller testified that Ed-

---

**6.** As indicated above, Dr. Krause testified tele-   phonically.

wards' bipolar disorder was "chronic" and "episodic" and that he had a history of "impulsivity, impaired judgment, psychotic symptoms, and ... manic episodes" that made him likely to "repeat and engage in sexual offenses[.]" (Tr. 78). Edwards' counsel cross-examined Dr. Mueller about the statement in her report indicating that Edwards had used poor judgment in downloading child pornography but that the commission of his offense of child exploitation was not a manifestation of his bipolar disorder. Dr. Mueller explained that she included that statement in the report to show that "the insanity question was not there[.]" (Tr. 88). Dr. Mueller clarified that Edwards' mental abnormality of bipolar disorder was "absolutely, directly correlated" to his likelihood of repeating a sexually-related offense. (Tr. 89).

Dr. Parker testified at the hearing but did not give an opinion of whether Edwards should be classified as a SVP. Dr. Parker's testimony served as a means for Edwards to impeach the evaluation reports of Dr. Krause and Dr. Mueller. Dr. Parker questioned whether the evaluation reports thoroughly set forth the rationale for the opinions contained therein and opined that Dr. Krause's report did not provide an explicit explanation of how Edwards met the criteria for the diagnoses given. Dr. Parker acknowledged that there is no standard way to assess whether a person is a SVP and that the trial judge was the person who makes the final determination of whether someone is a SVP.

Before the trial court imposed sentencing, Edwards' counsel argued that the trial court should not find Edwards to be a SVP because Edwards had not been given two separate evaluations as required by the SVP statute due to the fact that Dr. Mueller and Dr. Krause had conducted a joint interview. The trial court sentenced Edwards to an aggregate term of five years for his three possession of child pornography convictions. The trial court also determined, "[p]ursuant to the testimony of Dr. Krause and Dr. Mueller," that Edwards should be classified as a SVP. (App. 172).

## DECISION

Edwards argues that the trial court erred by determining that he is a SVP because the doctors' evaluations were not in full compliance with a provision of the SVP statute, Indiana Code section 35–38–1–7.5(e), and because there is insufficient evidence to support the SVP determination.

### a. Doctors' evaluations

■ We first address Edwards' alleged procedural deficiency regarding the doctors' evaluations. As argued at the sentencing/SVP hearing, Edwards contends that Dr. Mueller's and Dr. Krause's evaluations were not in full compliance with Indiana Code section 35–38–1–7.5(e) due to the fact that the doctors evaluated him in each other's presence. The State argues that "Edwards' argument is not supported by the wording of the SVP statute." State's Br. at 11.

■ Edwards' argument requires that we interpret Indiana Code section 35–38–1–7.5(e). The primary goal of statutory interpretation is to give effect to the intention of the legislature. *Westbrook v. State,* 770 N.E.2d 868, 871 (Ind.Ct.App.2002). Words will be given their plain and ordinary meaning unless otherwise indicated by the statute. *Id.* When construing a statute, "[i]t is just as important to recognize what the statute does not say as it is to recognize what it does say." *State v. Dugan,* 793 N.E.2d 1034, 1036 (Ind.2003).

Indiana Code section 35–38–1–7.5(e) provides:

If a person is not a sexually violent predator under [Indiana Code section 35–38–1–7.5] subsection (b), the prosecuting attorney may request the court to conduct a hearing to determine whether the person ... is a sexually violent predator under subsection (a). *If the court grants the motion, the court shall appoint two (2) psychologists or psychiatrists who have expertise in criminal behavioral disorders to evaluate the person and testify at the hearing.* After conducting the hearing and considering the testimony of the two (2) psychologists or psychiatrists, the court shall determine whether the person is a sexually violent predator under subsection (a). A hearing conducted under this subsection may be combined with the person's sentencing hearing.

(Emphasis added). Edwards contends that the statute requires the two court-appointed doctors to evaluate the defendant on separate occasions. The State argues that the "statute does not dictate the manner in which the experts are to evaluate the person, let alone explicitly state that each expert must interview the person alone." State's Br. at 11–12. We agree with the State.

When the prosecutor files a motion requesting the trial court to hold a hearing to determine whether a defendant is a SVP, subsection (e) of the SVP statute requires only that the trial court appoint two doctors to evaluate the person; the statute does not specify the manner in which those doctors will conduct his or her evaluation. The statute speaks only to the procedural requirements of the trial court in making a SVP determination, not the procedural requirements of the court-ap-

pointed doctors in conducting their evaluations. Thus, we cannot say that the doctors' actions were contrary to the SVP statute or that they somehow invalidated the trial court's SVP determination.[7] *See, e.g., Westbrook,* 770 N.E.2d at 871 ("We will not construe the [SVP] statute so as to impose such additional burdens on the trial court in reaching its determination.").

### b. *Sufficiency of SVP determination*

■■■ Next, we turn to Edwards' argument that the trial court's determination that he is a SVP is not supported by sufficient evidence.

When a defendant makes a sufficiency-of-the-evidence challenge to a trial court's SVP finding, our inquiry is whether there was substantial evidence of probative value to support the trial court's finding that the defendant suffers from a mental abnormality or personality disorder that makes him or her likely to repeatedly commit the enumerated sex or violent offenses.

*Williams v. State,* 895 N.E.2d 377, 385 (Ind.Ct.App.2008). As with other considerations of the sufficiency of the evidence, we will neither reweigh the evidence nor judge the credibility of the witnesses. *Scott v. State,* 895 N.E.2d 369, 374 (Ind.Ct. App.2008). We will consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from that evidence and will affirm the trial court's judgment if it is supported by substantial evidence of probative value. *Id.*

■■■ Indiana Code section 35–38–1–7.5(a) defines a SVP as "a person who suffers from a mental abnormality or personality disorder that makes the individual likely to repeatedly commit a sex offense

---

**7.** Indeed, both doctors testified that while they were both present for an initial interview with Edwards, their evaluations were done independently and without input from the other. Furthermore, Dr. Krause had a second interview session with Edwards during which he administered psychological testing to Edwards.

(as defined in IC 11–8–8–5.2)." [8] For purposes of the SVP statute, "a person is 'likely' to reoffend ... if, because of a mental abnormality or personality disorder, the person presents a substantial danger, that is, a serious and well-founded risk, that he or she will commit the statutorily-enumerated sex ... crimes in the future." *Williams*, 895 N.E.2d at 385 (citations omitted). A "[l]ack of remorse may be an underlying consideration in determining the risk that the defendant will commit another crime[.]" *Scott*, 895 N.E.2d at 376 (internal quotes and citation omitted).

A defendant can be determined to be a SVP by operation of law under circumstances listed under subsection (b) of Indiana Code section 35–38–1–7.5. Here, Edwards—who pled guilty to three counts of possession of child pornography—was not a SVP by operation of law under subsection (b). *See* I.C. § 35–38–1–7.5(b). Thus, the State filed a petition, pursuant to subsection (e), requesting the trial court to order evaluations and conduct a hearing to determine whether Edwards was a SVP under subsection (a). The trial court—after granting the State's motion and appointing a psychologist and psychiatrist to evaluate Edwards—conducted a hearing, considered the testimony of the court-appointed doctors, and determined that Edwards was a SVP.

■ Edwards argues that Dr. Mueller's and Dr. Krause's reports and testimony are "too conclusory" to support the trial court's determination that he is a SVP.

Edwards' Br. at 7. In support of his argument, Edwards cites to *Marlett v. State*, 878 N.E.2d 860 (Ind.Ct.App.2007), *trans. denied*. In *Marlett*, the defendant pled guilty to criminal confinement of a minor, and the trial court appointed a psychologist and a psychiatrist to evaluate Marlett regarding whether or not he was a SVP. Both doctors submitted reports to the trial court and opined that Marlett qualified as a SVP. Based solely on the doctors' reports, the trial court determined Marlett was a SVP.[9]

Marlett appealed and argued that the doctors' reports were "too conclusory" to support the trial court's SVP determination and contended that State should have called the doctors to testify at the sentencing hearing to explain their reports and findings. *Marlett*, 878 N.E.2d at 871–72. On appeal, this court noted that the SVP statute in effect at Marlett's sentencing did not require a hearing or the consideration of testimony from the doctors. *Id.* at 871. We, however, discussed the beneficial change to the amended subsection (e) of the SVP statute and its new requirement that trial courts hold a hearing and consider the testimony of the doctors when determining whether a defendant was a SVP. *Id.* We commented that "[r]equiring live testimony w[ould] permit cross-examination of the experts and the adversarial testing of their conclusions" and would provide "substantially greater procedural protection to a defendant." *Id.*

In addressing Marlett's argument on appeal, we found "Marlett's concerns regarding the conclusory nature of the reports

---

8. Indiana Code section 11–8–8–5.2 defines "sex offense" as meaning "an offense listed in section 4.5(a) of this chapter." Indiana Code section 11–8–8–4.5(a) lists seventeen specific offenses that classify a convicted person as a sex offender, including child exploitation and possession of child pornography. I.C. § 11–8–8–4.5(a)(4), (13).

9. At the time of the Marlett's sentencing, the prior version of the SVP statute was in effect. Therefore, subsection (e) of the SVP statute did not, among other things, require the trial court to conduct a hearing and consider the testimony of the doctors when determining whether a defendant was a SVP. *See Marlett*, 878 N.E.2d at 870–71.

and failure of the experts to testify [were] valid[,]" especially given the fact that Marlett was convicted of criminal confinement and "did not commit an overtly sexual crime." *Id.* at 872. We took issue with the reports because one doctor concluded that Marlett was "at risk for repeating *the* offense"—which we interpreted to mean that the doctor believed Marlett was at risk for repeatedly confining minors—while the second doctor generally stated that Marlett "should be classified as a Sexually Violent Predator" and did not identify a specific crime or crimes that he was at risk of repeatedly committing. *Id.* Explaining that more specificity would be "especially helpful" in a case such as Marlett's where he had not committed an "overtly sexual crime[,]" we remanded the case to the trial court to hold a hearing in compliance with the amended version subsection (e) so that the trial court could hold a hearing in which the court-appointed doctors could "defend and explain" their conclusions. *Id.* at 872. "It seems . . . that the *Marlett* court's primary concern in remanding for a hearing was that the defendant was being labeled a [SVP] based on a single, non-sexual crime." *Scott v. State,* 895 N.E.2d 369, 374 (Ind.Ct.App. 2008).

Unlike *Marlett,* here, Edwards was convicted of an "overtly sexual crime" and the trial court's determination was not based merely on the court-appointed doctors' written reports. Instead, the trial court held a SVP hearing where it obtained the testimony of the doctors and where Edwards was able to cross-examine the doctors regarding their diagnoses and conclusions that he should be classified as a SVP. In addition to subjecting the court-appointed doctors' conclusions to the crucible of cross-examination, Edwards' counsel also called a psychiatrist as his own witness in an effort to impeach the court-appointed doctors' reports, procedures, and findings.

Here, the trial court heard and considered the testimony of all three doctors—two of whom diagnosed Edwards with a mental illness and opined that he was likely to commit another sex offense—and determined that Edwards was a SVP. In the end, Edwards' argument amounts to nothing more than an invitation for this court to judge the credibility of the witnesses, which we cannot do.[10] *See Scott,* 895 N.E.2d at 374. The amended SVP statute requiring the trial court to hold a hearing and consider testimony of experts was put into full effect, and Edwards was able to engage in "adversarial testing" of the doctors' conclusions and enjoy the "substantially greater procedural protection" that the statute provides. *See Marlett,* 878 N.E.2d at 871. The trial court, after weighing the doctors' reports and testimony, considering the PSI, and finding that Edwards also had a lack of remorse, determined that he should be classified as a SVP. We cannot say that the trial court abused its discretion in its determination. *See, e.g., Scott,* 895 N.E.2d at 376–77 (affirming the trial court's SVP determination where there was no hearing but where the defendant committed an overtly sexual crime, lacked remorse, had a prior attempted child molest conviction, and one of the doctor's written reports concluded the defendant suffered from antisocial personality disorder and was "significantly more like than the average individual to engage in the offenses listed").[11]

Affirmed.

RILEY, J., and BARNES, J., concur.

---

10. We do, however, express some concern with Dr. Krause's inability or unwillingness to answer questions regarding some of the psychometric instruments administered to Edwards. Nevertheless, the trial court was able

consider that fact when weighing and judging the credibility of Dr. Krause's testimony.

11. Edwards also suggests that the SVP determination is not supported by sufficient evidence because the doctors failed to connect Edwards' diagnosis or mental abnormality to his current crime of possession of child pornography. The SVP statute, however, contains no such requirement. Instead, to be classified as a SVP, there needs to be a connection between the mental abnormality and risk of repeatedly committing a sex offense in the future. See I.C. § 35–38–1–7.5(a) (defining a SVP as "a person who suffers from a mental abnormality or personality disorder that makes the individual likely to repeatedly commit a sex offense (as defined in IC 11–8–8–5.2)"). We, therefore, reject his argument to construe the statute otherwise. See Dugan, 793 N.E.2d at 1036 (explaining that "[i]t is just as important to recognize what the statute does not say as it is to recognize what it does say"); Westbrook, 770 N.E.2d at 871 ("We will not construe the [SVP] statute so as to impose such additional burdens on the trial court in reaching its determination.").