**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**L. ROSS ROWLAND**
Public Defender's Office
Muncie, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DAVID D. WEST, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 18A02-1202-CR-146 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable Linda Ralu Wolf, Judge
Cause No. 18C03-1009-FC-30

**August 28, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellant-defendant David D. West appeals his convictions on two counts of Child Exploitation,[1] a class C felony, and two counts of Possession of Child Pornography,[2] a class D felony. West claims that the trial court erred in admitting several photographs into evidence that were identified as coming from his camera, that the prosecutor committed misconduct, that the trial court erred in determining that he is a sexually violent predator (SVP), and that his eleven-year aggregate sentence is inappropriate. Concluding that the photographs were properly admitted into evidence, and finding no other error, we affirm the judgment of the trial court.

FACTS

In September 2010, S.B. had known West for approximately five years, since she was in middle school. West was teaching S.B. about photography and occasionally she left her two-year-old daughter, A.B., for West to babysit while she was shopping or running other errands. On several occasions, West took naked photographs of A.B. without S.B.'s permission.

On September 3, 2010, West brought his digital camera into Jack's Camera Shop in Muncie and asked an employee, Jennifer York, to make a CD of the photos that were on the camera. York agreed to do so and she downloaded the photographs from West's camera onto the store's computer and reviewed the photos before copying them onto a

---

[1] Ind. Code § 35-42-4-4(b)(1).

[2] I.C. § 35-42-4-4(c).

2

disc. After West received the CD, he left the store. Thereafter, York contacted the Muncie Police Department.

On September 10, 2010, the State charged West with two counts of child exploitation, a class C felony, possession of child pornography, a class D felony, and performance before a minor that is harmful to minors, a class D felony. The State subsequently amended the charges, and a jury trial commenced on August 24, 2011.

At trial, York identified three photographs that she had removed from West's camera. The photos included one of West, a close-up of A.B.'s vagina taken while she wore no underwear and had her legs spread, a photograph of A.B. standing on a bed naked with another young girl who also appears to be naked but who was partially concealed by a toy, and a photograph of her on top of a nineteen-year-old girl who was also naked.

West objected to the photographs' admission into evidence on the grounds that the State had failed to lay an adequate foundation for their admission. The trial court then permitted West to ask York some preliminary questions. Following some questioning about the large number of photos that York had processed during her career and her ability to recall these specific photographs, the trial court admitted the photographs over West's objection.

At some point during closing argument, the deputy prosecutor gave an incomplete definition of sexual conduct to the jury with regard to the child exploitation charge. More particularly, the deputy prosecutor remarked, "And as before, we talk about sexual

3

conduct, this is showing of genitalia. By a child under the age of eighteen." Tr. p. 143. However, the deputy prosecutor had previously engaged in a detailed and complete discussion of the definition with the jury during the argument. Id. at 142-43. More particularly, the deputy prosecutor thoroughly discussed the need to find that the photographs were for someone's sexual arousal. Id.

At the conclusion of the trial, the jury found West guilty as charged on the child exploitation and possession of child pornography charges. Pursuant to the State's motion, the trial court appointed psychiatrist, Dr. Craig Buckles, and a psychologist, Dr. Frank Krause, to determine whether West should be considered a SVP.

Dr. Buckles observed that West showed signs of antisocial personality disorder as well as psychosis, and he opined that West might be a pedophile. Dr. Krause concluded that West exhibited traits of a personality disorder and displayed borderline antisocial characteristics. Both physicians determined that West was likely to reoffend given the opportunity, and both recommended that the trial court should declare West a SVP.

The trial court, in fact, found that West was a SVP. In considering what sentence to impose, the trial court identified both mitigating and aggravating circumstances. The trial court determined that the aggravating factors outweighed the mitigating circumstances and sentenced West to an aggregate term of eleven years of incarceration. More particularly, West received seven years on Count I, seven years on Count II, to be served concurrently with Count I, two years on Count III, to be served consecutively to

4

Counts I and II, and two years on Count IV, to be served consecutively to Counts I, II, and III. West now appeals.

## DISCUSSION AND DECISION

### I. Admission of Photographs

West first contends that the trial court abused its discretion in admitting several photographs of A.B. into evidence at trial. Specifically, West maintains that the State failed to lay a proper foundation for their admission.

In resolving this issue, we initially observe that West has failed to present a cogent argument in support of his claim, and he does not identify the applicable standard of review. As set forth in Indiana Appellate Rule 46(A)(8)(a), "the argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the record on Appeal relied on. . . ." West has waived this issue because he cites no legal authority whatsoever in support of his claim on appeal. Vance v. State, 860 N.E.2d 617, 620 (Ind. Ct. App. 2007).

Waiver notwithstanding, a trial court has broad discretion in ruling on the admissibility of evidence, and we will disturb the trial court's ruling only where it is shown that the trial court abused its discretion. Sublett v. State, 815 N.E.2d 1031, 1034 (Ind. Ct. App. 2004). An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. Packer v. State, 800 N.E.2d 574, 578 (Ind. Ct. App. 2003). Also, even if a trial court errs

5

in admitting evidence, we will not overturn the conviction if the error is harmless. Appleton v. State, 740 N.E.2d 122, 124 (Ind. 2001). An error will be viewed as harmless if the probable impact of the evidence upon the jury is sufficiently minor so as not to affect a party's substantial rights. Fleener v. State, 656 N.E.2d 1140, 1142 (Ind. 1995).

In this case, York testified that West brought his camera into the shop and asked her to make a CD with copies of the digital photographs stored on the camera. Tr. p. 64-65. York took the memory card from the camera, downloaded the images from it onto the store's computer, and reviewed the images before copying them to a CD for West. After several of the images caught her attention, she showed them to a coworker and contacted the police. York testified at trial that she recognized the three photographs that the State offered as Exhibits 1, 2, and 3, as images that had been on the memory card that West had provided to her from his camera.

In light of the above, York's testimony provided an adequate foundation with regard to the identification and authentication of the photographs. Although West objected to the adequacy of the foundation for the admission of the photographs and was permitted to ask preliminary questions, he never specified what aspect of the foundation he found lacking. Rather, West's preliminary questions focused on how many photographs York had processed during her years of employment and how she remembered the photos. Tr. p. 68-69.

Although West asserts that the foundation for the admission of the photographs into evidence was inadequate "because there was no testimony that the disc was given to

an officer or that those pictures were taken from that disc," West directs us to no authority, and we have found none, in support of the proposition that the photographs should have passed through the possession of a police officer to identify and authenticate them prior to their admission. Appellant's Br. p. 11. York's testimony that she recognized the photographs in the exhibits as the images that West had provided to her from his camera provided an adequate basis for admitting them into evidence. Thus, West's claim fails.

## II. Prosecutorial Misconduct

West next contends that his conviction must be reversed because of prosecutorial misconduct. Specifically, West asserts that the trial court erred "in allowing the State to mislead the jury by giving only a partial definition of sexual conduct" during closing argument. Appellant's Br. p. 1.

West has also waived this argument by failing to present a cogent argument supported by legal authority. He cites no legal authority in support of his claim and does not set forth any standard of review. Waiver notwithstanding, we note that reviewing a prosecutorial misconduct claim requires two steps. First, we must determine whether the prosecutor engaged in misconduct. Carter v. State, 956 N.E.2d 167, 169 (Ind. Ct. App. 2011), trans. denied. We then determine "whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he should not have been subjected." Id. The gravity of peril is measured by the probable persuasive

7

effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct. Booher v. State, 773 N.E.2d 814, 817 (Ind. 2002).

To preserve a claim of prosecutorial misconduct, the defendant must not only object to the alleged misconduct but must also request an admonishment and move for a mistrial. Cowan v. State, 783 N.E.2d 1270, 1277 (Ind. Ct. App. 2003). Although West objected to the deputy prosecutor's alleged misstatement of the law during closing argument, West neither requested an admonishment nor moved for a mistrial. Tr. p. 143-44. Thus, his claim is not preserved. That said, when the claim is not preserved by a contemporaneous objection and request for admonishment and mistrial, the defendant must not only establish the grounds for prosecutorial misconduct but also the grounds for fundamental error in order to succeed on his claim. Booher, 773 N.E.2d at 818. Fundamental error is a "substantial, blatant violation of due process" that is so prejudicial to the rights of the defendant that a fair trial was impossible. Hall v. State, 937 N.E.2d 911, 913 (Ind. Ct. App. 2010).

As noted above, the prosecutor had argued that the sexual conduct supported Count II, stating, "as before, we talk about sexual conduct, this is showing of genitalia. By a child under the age of eighteen." Tr. p. 143. While this statement standing alone is not a complete definition of sexual conduct, the prosecutor had already recited the complete definition contained in the jury instructions earlier in closing argument. Id. at 142-43. Also during that discussion, the deputy prosecutor discussed the need for the jury to find evidence that the pictures were for someone's sexual arousal. Moreover, the

8

trial court instructed the jury that 1) the jury was the judge of the law and the facts; 2) the court's instructions are the jurors' best source for determining what the law is; and 3) the statements and arguments made by counsel are not evidence. Id. at 131-35.

When considering all of these comments that were made during closing argument in conjunction with the final instructions that were given, there is no indication that the deputy prosecutor made any effort to mislead the jury about the law. Put another way, there is no reasonable probability that the isolated statement to which West objected actually misled the jury.

In short, West has made no showing that the deputy prosecutor's comments placed him in a position of grave peril or deprived him of a fair trial. As a result, even if West had not waived this issue on appeal, his claim of prosecutorial misconduct would fail.

### III. Sexually Violent Predator

West next argues that the trial court's finding that he is a SVP must be set aside. West maintains that the opinions of the psychiatrist and psychologist were based solely on "hearsay and the psychologist admit[ted] that his finding was not an exact science and there is a lot of gray area." Appellant's Br. p. 13.

Once again, West has waived this issue because he cites no legal authority or standard of review in support of his claim. Vance, 860 N.E.2d at 620. Waiver notwithstanding, we note that for the trial court to find West a SVP, the trial court had to determine if he suffered "from a mental abnormality or personality disorder that makes

9

him . . . likely to repeatedly commit the enumerated sex or violent offenses." Ind. Code §§ 35-38-1-7.5(a); 11-8-8-4.5(a).

When determining whether sufficient evidence exists with regard to a SVP finding, we will neither reweigh the evidence nor judge the credibility of the witnesses. Scott v. State, 895 N.E.2d 369, 374 (Ind. Ct. App. 2008). Also, we consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence. Id.

In this case, both physicians who were appointed by the trial court had conducted approximately thirty-five prior SVP evaluations. Tr. p. 175, 183. Both of them interviewed West, and Dr. Krause had previously met West because the trial court had appointed him to perform a competency evaluation earlier in the case. Id. at 170, 182. Dr. Krause issued several psychological tests to West, including personality assessments and intelligence testing.

Both doctors submitted written summary reports of their findings to the trial court and testified at the SVP determination hearing. They both determined that West was likely to reoffend if given the opportunity and that he should be classified as a SVP. Tr. p. 175-76, 187, 189. Dr. Buckles found that West had disorganized thinking, reported hallucinations, saw nothing wrong with his conduct, and had a history of alcohol abuse. Id. at 173-74. He concluded that West displayed symptoms of psychosis, antisocial personality disorder, and that he may be a pedophile because of his interest in photos of naked children. Id. at 174, 176-77, 179. Dr. Krause also found that West lacked remorse

and had no interest in treatment. Id. at 185-86. It was further determined that West had a history of intense and volatile relationships, showed impulsiveness, and was "unsympathetic in his relationships." Id. at 188. Dr. Krause concluded that West had a personality disorder and displayed antisocial traits. Id. at 186.

The basis for, and the limits of, the doctors' opinions were explored during direct and cross-examination, and it is apparent that the trial court reasonably relied on both doctors' opinions that West should be found to be a SVP. Similarly, we cannot say that Dr. Buckles's testimony was unreliable merely because he had been led to believe that West possessed many pornographic photographs of children, even though he had not personally seen them. Tr. p. 174, 176-77, 179. The pictures influenced Dr. Buckles's opinion that West may be a pedophile, and Dr. Buckles explained that his opinion was based on West's interest in pictures of naked children and that it did not matter how many of those types of photos that West possessed. Contrary to West's contention, there is no basis to believe that the total number of such pictures would alter Dr. Buckles's opinion that West suffered from a personality disorder, was likely to reoffend, and should be found to be a SVP.

In sum, the reports and testimony of both doctors are more than sufficient to sustain the trial court's finding that West is a SVP. Thus, even if West had not waived this issue on appeal, we would decline to set that finding aside.

IV.  Sentencing

11

Finally, West challenges the appropriateness of his sentence. Specifically, he maintains that the eleven-year aggregate sentence is inappropriate when considering the nature of the offense and his character.

Pursuant to Indiana Rule of Appellate Procedure 7(B), the "Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the question is not whether another sentence is more appropriate, but whether the sentence imposed is inappropriate. King v. State, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). The defendant carries the burden of persuading this court that his sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006). The defendant must show that his sentence is inappropriate in light of both his character and the nature of the offense. Williams v. State, 891 N.E.2d 621, 633 (Ind. 2006).

As for the nature of the offense, the evidence shows that West cultivated a trusting relationship with S.B., A.B.'s mother, and was allowed to babysit A.B. on several occasions. Tr. p. 84-87, 89, 96. West took multiple photographs of A.B. when she was unclothed. The photos included a very close up image of her vagina with her legs spread, a photograph of her with another naked young girl, and a photograph of her laying on top of a nineteen-year-old girl, who was also naked. Id. at 115-16. West abused his position of trust to take pornographic images of A.B. and disseminated these images by taking

them to a camera shop to be copied. Nothing about the nature of West's offenses renders his sentence inappropriate.

As for West's character, the record shows that he committed the instant offenses while on probation for attempted criminal confinement. West has a history of alcohol abuse and, despite being on probation, claimed to have consumed a half-gallon of whiskey on the day that he committed the offenses, although he asserted that he "wasn't even buzzed." Tr. p. 215. West showed no remorse for his actions and, although he admitted taking the photographs, he denied that he did anything wrong. Id. at 209-14.

West attempted to minimize his conduct by claiming that he was not a sex offender and did not harm any children because he did not touch them but only took photographs. Tr. p. 185, 209. He also told Dr. Buckles that the photographs were taken with S.B.'s permission and only from a distance. However, the evidence demonstrated that S.B. never saw the naked photographs and that she never gave West permission to take them.

In sum, West's conduct demonstrates a pattern of behavior where he used his interest in photography to exploit a vulnerable young person to satisfy his own sexual interest. In light of the above, we conclude that West has failed to prove that his sentence is inappropriate in light of the nature of the offense or his character. Thus, we decline to set his sentence aside.

The judgment of the trial court is affirmed.

ROBB, C.J., and BRADFORD, J., concur.

13