**Johanna P. WILLIAMS, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 47A05–0802–CR–101.**

Court of Appeals of Indiana.

Oct. 28, 2008.

See also, *Scott v. State*, 895 N.E.2d 369, 2008 WL 4711844.

Nick J. Herthel, Herthel & Herthel, Bedford, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Zachary J. Stock, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE [1]

Appellant–Defendant, Johanna P. Williams (Williams), appeals her sentence for child molesting, as a Class C felony, Ind.Code § 35–42–4–3, and sexual misconduct with a minor, as a Class C felony, Ind.Code § 35–42–4–9, and the trial court's determination that she is a sexually violent predator (or SVP).

We affirm in part, reverse in part, and remand with instructions.

### ISSUES

On appeal, Williams raises three issues with regard to her sentence, one of which we find to be dispositive:

(1) Whether her sentence violates the United States Supreme Court's opinion in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), *reh'g denied.*

Williams also raises two issues with regard to the trial court's SVP finding, which we restate as follows:

(2) Whether there is sufficient evidence to support the trial court's finding that Williams is a sexually violent predator; and

(3) Whether the application to Williams of the current statute requiring sexually violent predators to register as sex offenders for life violates the prohibition against *ex post facto* laws.

### FACTS AND PROCEDURAL HISTORY [2]

In March of 2005, Williams, who was twenty years old at the time, had sexual encounters with P.N., who was under four-

---

1. We issue this opinion along with *Scott v. State*, 895 N.E.2d 369 (Ind.Ct.App., 2008).

2. We notice that Williams' counsel has reproduced the entire transcript from this case in the Appellant's Appendix. We direct counsel to Indiana Appellate Rule 50, which states that the appellant's appendix shall contain, among other things: "(d) the *portion* of the Transcript that contains the rationale of decision and any colloquy related thereto, if and to the extent the brief challenges any oral ruling or statement of decision"; "(g) any other *short excerpts* from the Record on Appeal, in chronological order, such as essential portions of a contract, pertinent pictures, or *brief portions of the Transcript*, that are important to a consideration of the issues raised on appeal"; and "(h) any record material relied on in the brief *unless the material is already included in the transcript.*" (Emphases added). This rule is meant to avoid unnecessary bloating of the appellate record and to streamline our review. In other words, we do not need two full copies of the transcript.

teen at the time, and A.T., who was fourteen at the time. Williams touched P.N.'s vagina and placed her mouth on A.T.'s penis. Both P.N. and A.T. lived with Williams' adoptive sister. P.N. is the daughter of Williams' adoptive sister, and A.T. had been placed in foster care with Williams' adoptive sister.[3]

On August 29, 2005, the State filed an Information charging Williams with Count I, child molesting, as a Class B felony, I.C. § 35–42–4–3, based on her conduct with P.N., and Count II, child molesting, as a Class B felony, I.C. § 35–42–4–3, based on her conduct with A.T. On October 12, 2005, the State amended Count II to allege sexual misconduct with a minor as a Class C felony, I.C. § 35–42–4–9, based on the ages of Williams (20) and A.T. (14) at the time of the offense. Finally, on November 13, 2006, following plea negotiations, the State amended Count I to allege child molesting as a Class C felony, I.C. § 35–42–4–3, based on Williams' conduct with P.N. Williams agreed to plead guilty to the amended charges, and the parties agreed that Williams' sentences would be served concurrently. The trial court accepted the plea agreement and set the matter for sentencing.

On July 11, 2007, while sentencing was still pending, the State moved to have Williams labeled as a sexually violent predator. The trial court appointed two psychologists, Dr. Lois Rifner (Dr. Rifner) and Dr. Lawrence Ewert (Dr. Ewert), to evaluate Williams to aid in the making of that determination. On October 11, 2007, Dr. Ewert filed his report with the trial court. In his report, Dr. Ewert opined that Williams "does not meet the criteria for being a Sexually Violent Predator. It does not appear likely that she will re-

peatedly engage in the offenses listed in the code definition of SVP. She most closely resembles the female sex offender types with low levels of risk to reoffend sexually." (Appellant's App. p. 227). On October 17, 2007, Dr. Rifner filed her report with the trial court. Dr. Rifner noted in her report that Williams had admitted that she had been engaged in sexual acts with P.N. for approximately ten years. Dr. Rifner diagnosed Williams with pedophilia, alcohol abuse, a personality disorder, and brain injuries and opined that "[s]he is at moderate risk to commit future sex offenses." (Appellant's App. pp. 243–44). However, Dr. Rifner did not reach a specific conclusion in her written report as to whether Williams should be classified as a sexually violent predator. After the reports were submitted, the trial court set a sentencing hearing and ordered Dr. Ewert and Dr. Rifner to appear to testify.

On February 6, 2008, the trial court held an SVP/sentencing hearing. Dr. Ewert and Dr. Rifner testified regarding Williams' SVP status. When asked whether she had come to a conclusion as to whether Williams is a sexually violent predator, Dr. Rifner testified, "I believe that she is." (Transcript p. 42). The trial court also heard from a few other witnesses, including Williams. At the end of the hearing, the trial court determined that Williams should be classified as a sexually violent predator. Then, in sentencing Williams for the underlying offenses, the trial court found one aggravating circumstance—Williams was in a position of trust with her victims—and one mitigating circumstance—Williams' lack of criminal history. Finding Williams' abuse of her position of trust to outweigh her lack of criminal history,

3. Williams testified that A.T. was a foster child with Williams' "aunt" at the time of the offenses. (Tr. p. 83). However, the record indicates that A.T. was a foster child with Williams' adoptive sister. (Appellant's App. p. 238).

the trial court sentenced Williams to concurrent terms of seven years, with three years suspended to supervised probation, on each count.

Williams now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

On appeal, Williams challenges her sentence, the trial court's finding that she is a sexually violent predator, and the consequent requirement that she register as a sex offender for life. Before we address the merits of the appeal, we note that Williams' attorney included a copy of the presentence investigation report on white paper in the Appellant's Appendix. In *Hamed v. State*, 852 N.E.2d 619, 621 (Ind. Ct.App.2006), we explained:

> Ind. Appellate Rule 9(J) requires that "[d]ocuments and information excluded from public access pursuant to Ind. Administrative Rule 9(G)(1) shall be filed in accordance with Trial Rule 5(G)." Ind. Administrative Rule 9(G)(1)(b)(viii) states that "[a]ll pre-sentence reports pursuant to Ind.Code § 35–38–1–13" are "excluded from public access" and "confidential." The inclusion of the presentence investigation report printed on white paper in his appellant's appendix is inconsistent with Trial Rule 5(G), which states, in pertinent part:
>
>> Every document filed in a case shall separately identify information excluded from public access pursuant to Admin. R. 9(G)(1) as follows:
>>
>> (1) Whole documents that are excluded from public access pursuant to Administrative Rule 9(G)(1) shall be tendered on light green paper or have a light green coversheet attached to the document, marked "Not for Public Access" or "Confidential."
>>
>> (2) When only a portion of a document contains information excluded

> from public access pursuant to Administrative Rule 9(G)(1), said information shall be omitted [or redacted] from the filed document and set forth on a separate accompanying document on light green paper conspicuously marked "Not For Public Access" or "Confidential" and clearly designating [or identifying] the caption and number of the case and the document and location within the document to which the redacted material pertains.

We ask that counsel follow this procedure in the future.

### I. *Sentencing*

 Williams first challenges her sentence. Because she committed her offenses in March of 2005, before our current advisory sentencing scheme went into effect on April 25, 2005, she was entitled to be sentenced pursuant to the former presumptive sentencing scheme. *See Gutermuth v. State*, 868 N.E.2d 427, 431 n. 4 (Ind.2007). Under that scheme, Indiana trial courts were constrained by the United States Supreme Court's decision in *Blakely*. Under *Blakely*, a court can enhance a sentence beyond the presumptive term based only on those facts that are established in one of the following ways: (1) as a fact of prior conviction; (2) by a jury beyond a reasonable doubt; (3) when admitted by the defendant; and (4) in the course of a guilty plea where the defendant has waived his or her rights under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and stipulated to certain facts or consented to judicial factfinding. *Trusley v. State*, 829 N.E.2d 923, 925 (Ind.2005).

Here, Williams was convicted of two Class C felonies. The Class C felony sentencing statute that was in effect at the time of Williams' offenses provided for a minimum sentence of two years, a maxi-

mum sentence of eight years, and a presumptive sentence of four years. I.C. § 35–50–2–6 (2004). The trial court imposed an enhanced term of seven years for each of Williams' Class C felonies, with those terms to run concurrently. Those enhancements were supported by a single aggravating circumstance: Williams was in a position of trust with her victims.

On appeal, Williams contends that the facts underlying that aggravator were not established in one of the ways discussed in *Trusley* and that, therefore, her sentence violates *Blakely*.[4] The State, on the other hand, argues that Williams "admitted the essential facts leading to her enhanced sentence." (Appellee's Br. p. 6). We agree with Williams.

The State asserts:

[Williams] admitted that she molested her niece and a foster child living in her neighborhood. [Williams'] mother further testified that the niece was at times left in the care of [Williams]. This apparently resulted in roughly ten years of abuse. These facts were either admitted by [Williams] herself or presented to the trial court via defense witnesses at the sentencing hearing.

(Appellee's Br. p. 7). The first problem with the State's argument is that it does not include any citations to the record. The State apparently hopes that we will simply believe it or that we will do its homework. We decline to do either, and we refer the State to Indiana Appellate Rule 46, which requires that contentions on appeal be supported by cogent reasoning and citations to authorities and "the

Appendix or parts of the Record on Appeal relied on [.]" (Emphasis added).

We do observe, however, that even if we were to accept the State's unsupported claim that Williams made the admissions above, the State has failed to cite to any authority for the proposition that an admission to being someone's aunt is tantamount to being in a position of trust with that person. Certainly, aunts and uncles will often be in positions of trust with their nieces and nephews. But that is not always the case, and the State does not direct us to any admission by Williams that suggests that such was the case here. Furthermore, to the extent that the State suggests that Williams was in a position of trust with her victims because she lived in the same neighborhood as them at the time of the offenses, Williams merely testified that A.T. "used to be our neighbor, he used to be a little boy, but I didn't know that at the time." (Tr. p. 83). This testimony by no means establishes that Williams lived in the same neighborhood as her victims *at the time of the offenses*. We ask the State to more accurately represent the record in the future.

Finally, we acknowledge the State's suggestion that the facts underlying the position of trust aggravator were essentially admitted by Williams because they were testified to by a defense witness, *i.e.*, Williams' mother. Specifically, while cross-examining Williams' mother during the sentencing hearing, the prosecuting attorney asked, "Also, what was [Williams'] relationship with [P.N.], would she babysit with her, take care of her, that kind of thing?" (Tr. p. 75). Williams' mother re-

---

**4.** Based on the trial court's explicit reference to the "advisory sentence" during the November 13, 2006, guilty plea hearing, we gather that the trial court mistakenly sentenced Williams under the advisory scheme rather than the presumptive scheme. (Tr. p. 3).

Williams argues that we should remand this cause to the trial court for resentencing based on this reason alone. But a new sentence is unnecessary unless Williams can show that the sentence actually imposed violates *Blakely*. As such, we continue with our analysis.

sponded, "Yes." (Tr. p. 75). The State would have us hold that testimony from a defense witness satisfies the *Blakely* requirement that facts be "admitted by the defendant." *Blakely*, 542 U.S. at 303, 124 S.Ct. at 2537, 159 L.Ed.2d 403. For several reasons, we refuse to do so.

First, the State has again failed to cite any authority whatsoever for this proposition. Second, our own research reveals that the sparse case law on this issue goes against the State. The United States Court of Appeals for the Fourth Circuit has stated, "Admissions may take a variety of forms, including guilty pleas and stipulations, a defendant's own statements in open court, and representations by counsel." *United States v. Revels*, 455 F.3d 448, 450 (4th Cir.2006) (citing *Blakely*, 542 U.S. at 304, 310, 124 S.Ct. 2531, 159 L.Ed.2d 403; *United States v. Henry*, 417 F.3d 493, 495 (5th Cir.2005), *cert. denied*, 546 U.S. 1025, 126 S.Ct. 673, 163 L.Ed.2d 542 (2005); *United States v. Devono*, 413 F.3d 804, 805 (8th Cir.2005); *United States v. Bartram*, 407 F.3d 307, 310–11 (4th Cir.2005), *cert. denied*, 546 U.S. 1189, 126 S.Ct. 1374, 164 L.Ed.2d 82 (2006); *id.* at 315 (Niemeyer, J., concurring in part and concurring in the judgment)), *cert. denied*, —— U.S. ——, 127 S.Ct. 299, 166 L.Ed.2d 226 (2006). There is no suggestion therein that the testimony of other witnesses can constitute an admission by the defendant. Likewise, the North Carolina Supreme Court has held that, under *Blakely*, "a judge may not find an aggravating factor on the basis of a defendant's admission unless that defendant *personally or through counsel* admits the necessary facts or admits that the aggravating factor is applicable." *State v. Hurt*, 361 N.C. 325, 643 S.E.2d 915, 918 (2007) (emphasis added). Third, even though it was Williams' attorney who called Williams' mother as a witness at the sentencing hearing, it was the State that asked the question about the nature of Williams' relationship with P.N. In other words, Williams' attorney did not even elicit, let alone admit, the facts underlying the position of trust aggravator.

In sum, we conclude that the position of trust aggravator (the trial court's only aggravator) violated Williams' rights under *Blakely* because the facts underlying that aggravator were neither found by a jury nor admitted by Williams' or Williams' attorney. We recognize that the record before us suggests that Williams probably *was* in a position of trust with P.N. Nonetheless, *Blakely* requires that the facts supporting an enhanced sentence be established in one of several narrow ways, and that did not happen in this case.

■ When an appellate court invalidates an aggravator because the underlying fact was not proven to the standard set in *Blakely*, it is proper to remand for re-sentencing to give the State the opportunity to prove the aggravator beyond a reasonable doubt, though the State may not attempt to prove new aggravators beyond those initially presented to, and found by, the trial court. *See Neff v. State*, 849 N.E.2d 556, 561 (Ind.2006). Therefore, we remand this cause to the trial court to allow the State the opportunity to establish the position of trust aggravator in a manner consistent with *Blakely*. If the State elects not to do so, then the trial court shall re-sentence Williams without any aggravating circumstances. In light of this action, we need not separately address Williams' argument that her sentence is inappropriate.

## II. *SVP Determination*

### A. *Sufficiency of the Evidence*

Williams next contests the trial court's finding that she is a sexually violent predator. As we note today in *Scott v. State*,

895 N.E.2d 369 (Ind.Ct.App., 2008), our legislature significantly revised the statutes governing SVP determinations between the time of Williams' offenses in March of 2005 and the time of the SVP/sentencing hearing in February of 2008. (Citing P.L. 6–2006, § 5; P.L. 140–2006, §§ 13, 21, 41; P.L. 173–2006, §§ 13, 21, 55; P.L. 216–2007 §§ 12, 14, 37). In *Scott*, the trial court and both parties on appeal operated "under the terms of the statutes in effect prior to the 2006, 2007 amendments." *Id.* Here, on the other hand, all indications are that the trial court applied the statutes in effect at the time of the SVP/sentencing hearing, that is, the statutes as they existed following the 2006/2007 amendments. The parties on appeal have done the same, and we will follow their lead.

Under the most recent versions of the statutes, our legislature has defined a "sexually violent predator," in relevant part, as "a person who suffers from a mental abnormality or personality disorder that makes the individual likely to repeatedly commit a sex offense (as defined in IC 11–8–8–5.2)." I.C. § 35–38–1–7.5(a). A trial court must determine whether a person is a sexually violent predator "whenever the court sentences [the] person or a juvenile court issues a dispositional decree for a sex offense (as defined in IC 11–8–8–5.2) for which the person is required to register with the local law enforcement authority under IC 11–8–8." I.C. § 35–38–1–7.5(c). An SVP finding is automatic under the circumstances listed in Indiana Code subsection 35–38–1–7.5(b), none of which exist in this case. If the person is not an SVP by operation of law

under subsection (b), "the prosecuting attorney may request the court to conduct a hearing to determine whether the person (including a child adjudicated to be a delinquent child) is a sexually violent predator under subsection (a)." I.C. § 35–38–1–7.5(e). If the court grants the prosecuting attorney's request for such a hearing,

> the court shall appoint two (2) psychologists or psychiatrists who have expertise in criminal behavior disorders to evaluate the person and testify at a hearing. After conducting the hearing and considering the testimony of the two psychologists or psychiatrists, the court shall determine whether the person is a sexually violent predator under subsection (a).

*Id.* A person labeled as a sexually violent predator is required to register as a sex offender for life. I.C. § 11–8–8–19(b).

Here, the trial court was sentencing Williams for one count of child molesting as a Class C felony under Indiana Code section 35–42–4–3 and one count of sexual misconduct with a minor as a Class C felony under Indiana Code section 35–42–4–9. Each of these is a "sex offense (as defined in IC 11–8–8–5.2) for which the person is required to register with the local law enforcement authority under IC 11–8–8." *See* I.C. §§ 11–8–8–4.5(a)(3), 11–8–8–5(a)(3) (labeling a person who commits child molesting as a "sex offender" and a "sex or violent offender"); I.C. §§ 11–8–8–4.5(a)(8), 11–8–8–5(a)(8) (labeling a person who commits sexual misconduct with a minor as a Class A, Class B, or, in some cases, Class C felony[5] as a "sex offender"

---

5. A person who, like Williams, committed sexual misconduct with a minor as a Class C felony before July 1, 2007, is not a "sex offender" under Indiana Code section 11–8–8–4.5(a)(8) or a "sex or violent offender" under Indiana Code section 11–8–8–5(a)(8) if: (1)

the person was not more than five years older than the victim; and (2) the sentencing court finds that the person should not be required to register as a sex offender. Williams make no argument that this SVP exemption applies to her Class C felony sexual misconduct with

and a "sex or violent offender"); *see also* I.C. § 11–8–8–7 (requiring a "sex or violent offender" to register with the local law enforcement authority). As such, Williams was eligible for an SVP finding. *See* I.C. § 35–38–1–7.5(c). However, Williams did not qualify as an SVP by operation of law under Indiana Code subsection 35–38–1–7.5(b), so, on July 11, 2007, the State asked the trial court to determine whether Williams otherwise fits the definition of a sexually violent predator under Indiana Code subsection 35–38–1–7.5(a). The trial court set a hearing on the matter and appointed Dr. Rifner and Dr. Ewert to evaluate Williams. After receiving the doctors' reports and holding a hearing, the trial court determined that Williams is an SVP.

■ On appeal, Williams argues that there was insufficient evidence to support the trial court's finding. Williams contends that the State had the burden of proving that she is an SVP by clear and convincing evidence. In support of this claim, Williams directs us to two juvenile cases in which we applied the clear and convincing evidence standard. *See A.O. v. State*, 837 N.E.2d 219 (Ind.Ct.App.2005), and *K.J.P. v. State*, 724 N.E.2d 612 (Ind. Ct.App.2000), *trans. denied.* However, in both *A.O.* and *K.J.P.*, we were applying a statute—Indiana Code subsection 5–2–12–4(b) (repealed by P.L. 140–2006, § 41, and P.L. 173–2006, § 55)—in which our legislature had explicitly established a clear and convincing evidence standard for determining whether a juvenile was a "sex offender." *A.O.*, 837 N.E.2d at 221; *K.J.P.*, 724 N.E.2d at 615–16. Similar statutes including the same standard for juvenile cases still exist today. *See* I.C. §§ 11–8–8–4.5(b), 11–8–8–5(b). Still, our legislature

has not established the clear and convincing evidence standard, or any other standard, such as "preponderance of the evidence" or "beyond a reasonable doubt," for adult SVP findings, and we are not prepared to impose one.

■ Rather, we will adhere to the standard that we establish today in *Scott.* When a defendant makes a sufficiency-of-the-evidence challenge to a trial court's SVP finding, our inquiry is whether there was substantial evidence of probative value to support the trial court's finding that the defendant suffers from a mental abnormality or personality disorder that makes him or her likely to repeatedly commit the enumerated sex or violent offenses. *Scott*, 895 N.E.2d 369, at 374–75. We will neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* at 374–75. We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence. *Id.*

■ As we hold in *Scott*, a person is "likely" to reoffend for purposes of the Indiana SVP statute if, because of a mental abnormality or personality disorder, the person presents a substantial danger, that is, a serious and well-founded risk, that he or she will commit the statutorily-enumerated sex or violent crimes in the future. *Id.* at 384 (*citing People v. Superior Court (Ghilotti)*, 27 Cal.4th 888, 119 Cal.Rptr.2d 1, 44 P.3d 949, 971 (2002)). Here, in arguing that there was insufficient evidence to support the trial court's SVP finding, Williams makes several references to Dr. Ewert's report, in which he opined that Williams "does not meet the criteria for being a Sexually Violent Predator" and that she presents a low risk of reoffending. (Appellant's App. p. 227).

a minor conviction. Even if it did, Williams would still be SVP-eligible based on her Class

C felony child molesting conviction.

We acknowledge that Dr. Ewert's report does not support the trial court's finding. However, we have previously held that unanimity between the doctors is not required for an SVP finding. *Westbrook v. State*, 770 N.E.2d 868, 871 (Ind.Ct.App. 2002). Furthermore, under our standard of review, we are to consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence. *Scott*, 895 N.E.2d 369, at 374–75. Doing so, we turn to Dr. Rifner's report and testimony.

In her report, Dr. Rifner noted that as she explored the details of the underlying offenses, Williams admitted that she had been in sexual contact with P.N. since P.N. was three or four years old and Williams was approximately eleven. (Appellant's App. pp. 238–39). In addition, Dr. Rifner observed that A.T. had said that Williams "forced him to engage in oral sex, though he had tried to get away from her." (Appellant's App. p. 239). Finally, at the time of the underlying offenses, Williams was also involved in a sexual relationship with sixteen- or seventeen-year-old R.W., another foster child in the home of Williams' adoptive sister.

As for Williams' perception of her offenses, Dr. Rifner opined that when she met with Williams, "[t]here was no evidence in her demeanor that she was concerned about the impact of her behavior on others." (Appellant's App. p. 232). Dr. Rifner noted that Williams made statements of remorse but that "she showed no affect commensurate with the comments." (Appellant's App. p. 232). Dr. Rifner also observed that Williams "tends to blame her victims[.]" (Appellant's App. p. 232). Specifically, Williams said that the children living in her adoptive sister's home "were all having sex" before she got involved, as though she was giving an excuse for her behavior. (Appellant's App. p. 239).

Based on her evaluation of Williams and her background, Dr. Rifner concluded that Williams scored in the "moderate" level on the Sex Offender Risk Appraisal Guide (SORAG), "a 14–factor risk assessment instrument developed by psychologists who worked in the Ontario prison system mental health unit" that is "standard in evaluations of this type." (Appellant's App. pp. 230, 243). According to Dr. Rifner, persons with Williams' score "have a probability of 0.45 of reoffending over a period of seven years of access to potential victims and of 0.59 of reoffending over a period of ten years of access to potential victims. She is at the 60th percentile rank, indicating a moderate likelihood of reoffending." (Appellant's App. p. 243). Dr. Rifner diagnosed Williams with pedophilia, alcohol abuse, a personality disorder, and brain injuries and reported to the trial court that Williams presents a moderate risk of reoffending. (Appellant's App. pp. 243–44). At the hearing a few months later, the trial court asked Dr. Rifner whether she had come to a conclusion as to whether Williams is a sexually violent predator, and she responded, "I believe that she is." (Tr. p. 42).

Our review of this evidence reveals several factors that support the trial court's SVP finding: (1) Williams' current convictions for child molesting and sexual misconduct with a minor; (2) Williams' admission that she had been sexually active with P.N. for approximately ten years, since P.N. was three or four years old; (3) the fact that Williams was in a sexual relationship with sixteen- or seventeen-year-old R.W. at the time of the current offenses; (4) Williams' failure to grasp how her behavior impacts her victims; (5) Williams' lack of remorse; (6) A.T.'s claim that Williams forced oral sex on him over his resistance; (7) Dr. Rifner's diagnosis of Williams with pedophilia, alcohol abuse, a

personality disorder, and brain injuries; (8) Dr. Rifner's conclusion that persons with Williams' SORAG score present a 45% risk of reoffending over a period of seven years of access to potential victims and a 59% risk over a period of ten years of access to potential victims; and (9) Dr. Rifner's testimony that she believes that Williams is a sexually violent predator. This surely constitutes "substantial evidence of probative value" supporting the trial court's finding that Williams suffers from a mental abnormality or personality disorder that makes her likely to repeatedly commit the enumerated sex or violent offenses. *See Scott*, 895 N.E.2d 369, at 374–75. Put in the terms we adopt today in *Scott*, the trial court was justified in finding that Williams, because of a mental abnormality or personality disorder, presents a substantial danger, that is, a serious and well-founded risk, that she will commit sex offenses in the future. *Id.* at 375–76.

B. *Lifetime Registration Requirement*

Finally, Williams contends that, even if the trial court's SVP finding is supported by sufficient evidence, we must remand this cause to the trial court with instructions to change the duration of her registration requirement. Williams asserts that between the time of her offenses in March of 2005 and the time of her sentencing in February of 2008, the General Assembly amended the statute governing the registration period required for a person found to be a sexually violent predator. Specifically, Williams maintains that the former statute called for registration as a sex offender for an "indefinite period" and provided a mechanism for terminating the registration requirement. Under the statute currently in place, Williams notes, a sexually violent predator must register as a sex offender "for life." *See* I.C. § 11–8–8–19(b) (Supp.2008). Williams argues that, as applied to her, this change from indefinite registration to lifetime registration violates the constitutional prohibition against *ex post facto* laws.[6] For its part, the State accepts Williams' view of the applicable statutes but argues that there has been no *ex post facto* violation. Close research of the statutes involved reveals the flaw in the parties' arguments.

To be sure, our legislature did make changes to the statutes governing sex offender registration between the time of Williams' offenses and her SVP/sentencing hearing. Most notably, in 2006, our legislature moved the statutes governing sex offender registration from Title 5 (State and Local Administration) to Title 11 (Corrections) of the Indiana Code, specifically, from chapter 5–2–12 to chapter 11–8–8. However, the change identified by Williams—the change from indefinite registration to lifetime registration for sexually violent predators—happened three years earlier, in 2003, via Public Law 222–2003, § 1. *Compare* I.C. § 5–2–12–13 (2002) ("indefinite period") *with* I.C. § 5–2–12–13 (2004) ("for life"). In other words, Williams and the State are simply wrong that the General Assembly amended the registration period for sexually violent predators between the time of Williams' offenses and her sentencing. Rather, the version of Indiana Code section 5–2–12–13 in effect at the time of Williams' offenses provided that "[a]n offender who is found to be a sexually violent predator by a court under IC 35–38–1–7.5(b) is required to register *for life*." *See* I.C. § 5–2–12–13(b) (2004 & 2005 Supp.) (emphasis added). As noted above, the same registration period was in effect

---

**6.** Williams does not specify the "constitutional prohibition" to which she refers. Article I, § 10 of the United States Constitution provides, in part, "No State shall ... pass any ... *ex post facto* Law[.]" Article I, § 24 of the Indiana Constitution provides, in part, "No *ex post facto* law ... shall ever be passed."

at the time of Williams' SVP/sentencing hearing. *See* I.C. § 11–8–8–19(b) (Supp. 2008).

In making their *ex post facto* arguments, both parties make reference to our opinion in *Thompson v. State*, 875 N.E.2d 403, 410 (Ind.Ct.App.2007), *trans. denied*, where we held that the change to lifetime registration for sexually violent predators, as applied to the defendant, "runs afoul of *ex post facto* considerations." In light of the preceding discussion, we conclude that *Thompson* was wrongly decided.

■ Thompson committed his offenses on February 2, 2005, and he was sentenced on September 25, 2006. *Id.* at 407. We began our *ex post facto* analysis by noting that, during the interim, the General Assembly "amended the statute concerning a determination that a person is a sexually violent predator." *Id.* Later in the opinion, we addressed the change from indefinite registration to lifetime registration as though it had occurred during that same timeframe. *Id.* at 409. We wrote that "[t]he statute formerly in place" required sexually violent predators to register for an indefinite period. *Id.* However, as discussed above, the version of Indiana Code section 5–2–12–13 "in place" as of July 1, 2003, provided for lifetime registration. *See* P.L. 222–2003, § 1. Thus, it is apparent that the *Thompson* panel was relying on a pre–2003 amendment version of Indiana Code section 5–2–12–13. If the *Thompson* panel would have relied upon the version of Indiana Code section 5–2–12–13 that was in effect at the time of Thompson's crimes, it presumably would have found no *ex post facto* violation.[7]

In short, because the statute providing for lifetime registration for sexually violent predators was in effect well before Williams committed her crimes, her claim that she was the victim of an *ex post facto* statutory change is without merit.

On a final, related note, we reject Williams' assertion, based again on *Thompson*, that there is no escape from the current lifetime registration requirement for sexually violent predators. Indiana Code subsection 35–38–1–7.5(g) provides the mechanism for making a determination that a person is no longer a sexually violent predator, which can occur as little as ten years after the original finding. Obviously, if a court finds that person is no longer a sexually violent predator, then the statute that requires sexually violent predators to register for life would no longer apply. Therefore, the *Thompson* panel's observation that the lifetime registration requirement is "unequivocal and absolute" is incorrect. *Thompson*, 875 N.E.2d at 409.

### CONCLUSION

Based on the foregoing, we conclude that Williams was sentenced in violation of *Blakely*, so we remand this cause to the trial court to allow the State the opportunity to properly establish the position of trust aggravator. However, we also conclude that the evidence was sufficient to support the trial court's determination that Williams is a sexually violent predator and that the lifetime registration requirement, as applied to Williams, does not violate constitutional prohibitions on *ex post facto* laws.

Affirmed in part, reversed in part, and remanded with instructions.

BAILEY, J., and BRADFORD, J., concur.

---

7. Despite this error, our supreme court denied the State's petition to transfer. Having now reviewed that petition, we know that the State did not raise this statutory issue.