

FILED

Jun 23 2026, 12:14 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Indiana Supreme Court

Supreme Court Case No. 26S-CR-197

## Marty J. Wilson
*Appellant (Defendant below)*

—v—

## State of Indiana
*Appellee (Plaintiff below)*

---

Argued: December 9, 2025 | Decided: June 23, 2026

Appeal from the Lawrence Superior Court,
No. 47D02-9805-CF-257
The Honorable Robert R. Cline, Judge

On Petition to Transfer from the Indiana Court of Appeals,
No. 25A-CR-115

---

**Opinion by Justice Goff**

Chief Justice Rush and Justice Molter concur.
Justice Slaughter concurs in part and in the judgment with separate opinion in
which Justice Massa joins.

**Goff, Justice.**

By statute, a person classified as a "sexually violent predator" may, ten years after release from incarceration, petition a trial court annually to determine whether he "should no longer be considered a sexually violent predator." Although a trial court may summarily dismiss such a petition, we've consistently held that the opportunity for an offender to refile his petition annually saves the statute from ex post facto challenges. The circumstances here compel no different result. As such, we affirm the trial court's denial of the offender's petition for removal of his status as a sexually violent predator and its denial of his motion to correct error. However, to ensure meaningful review of these petitions going forward, we offer guidance on how offenders can tailor their petitions and how trial courts should exercise their discretion when ruling on these petitions.

## Facts and Procedural History

In June 1999, Marty Wilson pled guilty to Class B felony child molesting following allegations (in May 1998) that he performed sexual-deviate conduct with his ex-wife's twelve-year-old niece. The trial court accepted Wilson's guilty plea and, in August 1999, sentenced him to ten years with three years suspended. The law in effect at the time Wilson was charged required him to register as a sex offender for ten years upon release from prison. *See* Ind. Code §§ 5-2-12-4(c), -13(a) (1998). But in July 1998, the legislature amended Indiana's Sex Offender Registration Act by creating a new category of sex offender: the "sexually violent predator" (or SVP), defined as a person who "suffers from a mental abnormality or personality disorder" that makes the person "likely to repeatedly engage" in certain sex offenses. *See Lemmon v. Harris*, 949 N.E.2d 803, 806 (Ind. 2011) (summarizing amendments). This new law, which we refer to as the SVP Statute or just the Statute, directed trial courts to determine at sentencing, "after consulting with two board certified psychologists or psychiatrists," whether the defendant is an SVP; and it required designated SVPs to register as such for an indefinite period. *Id.*

Although the SVP Statute had taken effect by the time of Wilson's sentencing, the trial court failed to determine whether he was an SVP. Instead, Wilson registered as a sex offender for ten years—a requirement he complied with following his release from prison in 2002.

In 2003, the General Assembly amended the SVP Statute by imposing lifetime-registration requirements on SVPs. *Id.* Several years later, in 2007, the legislature amended the Statute yet again, creating a dual classification scheme for potential SVPs: (1) "by operation of law" based on a qualifying offense—*i.e.*, without the need for a determination by the trial court at sentencing; or, (2) if no such qualifying offense applies, by a determination from the trial court, upon the prosecutor's request, after hearing testimony from two court-appointed experts on whether the offender is likely to recidivate.[1] Pub. L. No. 216–2007, § 37, 2007 Ind. Acts 3281, 3319–21 (codified at I.C. §§ 35-38-1-7.5(a), (b), (e)). Under the revised Statute, then, an offender's SVP classification depends "either on *what they did* (offense-based criteria) or *who they are* (risk-based criteria requiring the presence of a mental disorder plus future dangerousness)." Aaron J. Kivisto, *Risk & Redemption: Does Social Science Support the Assumption of Lifelong Risk for Sexually Violent Predators?*, Res Gestae, May 2017, at 18, 19.

With his conviction for Class B felony child molesting, Wilson became an SVP "by operation of law" with no hearing or formal determination by the trial court, automatically increasing his required registration period from ten years to life. *See* I.C. § 35-38-1-7.5(b)(1)(C).

In August 2024, Wilson petitioned for removal of his SVP status, requested a hearing, and asked the trial court to appoint two experts to evaluate him. In his petition, Wilson pointed out that he had never been prosecuted for failing to register, had successfully completed sex-offender therapy "years ago" and had not committed any subsequent offenses, had

---

[1] This bifurcated classification scheme first appeared in a 2006 amendment to the SVP Statute, albeit with different procedural requirements. *See Lemmon v. Harris*, 949 N.E.2d 803, 806–07 (Ind. 2011). Under that amendment, a trial court would determine at sentencing whether the person was an SVP based on the commission of a qualifying offense or, if no such qualifying offense applied, based on consultation with experts. *Id.*

worked for the same supervisor/employer since 2003, was a military veteran, and had been married for thirteen years. App. Vol. 2, pp. 159–60. Wilson attached two documents to his petition: a letter from his sex-offender-registry coordinator at the county sheriff's office, confirming that he had complied with his registration requirements; and a letter from his employer attesting to Wilson's "professional manner" at work and the fact that he'd been transparent about his criminal history. *Id.* at 162–63.

After the trial court denied his petition, Wilson motioned to correct error, arguing that he fell into the category of registrants retroactively designated as SVPs by operation of law, thus entitling him to meaningful review of his potential for future dangerousness, the summary denial of which, he insisted, violated the constitutional prohibition on ex post facto laws. The trial court held an evidentiary hearing at which Wilson presented no further evidence or testimony. After having reviewed the original "criminal case file" in its entirety, the trial court, "firmly convinced that Mr. Wilson was still a danger and should be on the registry," denied the motion to correct error. Tr., pp. 7, 9.

The Court of Appeals affirmed in a memorandum decision, concluding that Wilson's ex post facto claim fails because the SVP Statute permits him to petition annually for relief from his status. *Wilson v. State*, 25A-CR-115, 2025 WL 1540392 (Ind. Ct. App. May 30, 2025). Wilson then petitioned for transfer, which we now grant, thus vacating the Court of Appeals' decision. *See* Ind. Appellate Rule 58(A).

## Standard of Review

Claims presenting questions of a statutory and constitutional dimension are subject to a de novo standard of review. *Tyson v. State*, 51 N.E.3d 88, 90 (Ind. 2016). And although we typically review rulings on motions to correct error under an abuse of discretion standard, "we review the matter de novo when the issue on appeal is purely a question of law." *In re Adoption of K.G.B.*, 18 N.E.3d 292, 296 (Ind. Ct. App. 2014) (internal citation and quotation marks omitted).

# Discussion and Decision

An SVP like Wilson may, ten years after release from incarceration, petition a court to determine whether he "should no longer be considered a sexually violent predator," *i.e.*, to determine whether he no longer "suffers from a mental abnormality or personality disorder" that makes him "likely to repeatedly commit a sex offense." I.C §§ 35-38-1-7.5(a), (g). Upon receipt of the petition, the court has two options: it "may dismiss" the petition, or it may appoint experts to evaluate the person and testify at a hearing to the SVP's likelihood of reoffending. I.C § 35-38-1-7.5(g). If the petition is dismissed, the SVP may re-petition the court once a year. *Id.*

Wilson argues that, as applied to him, the SVP Statute violates the Indiana Constitution's prohibition against ex post facto laws. *See* Ind. Const. art. 1, § 24. "By failing to appoint two experts to evaluate [his] future dangerousness" and by "summarily denying him a hearing merely due to the facts of [his] underlying criminal offense," Wilson insists the trial court denied him an "opportunity for meaningful review to seek removal of the SVP designation and lifetime registration requirement." Appellant Br. at 11. And because there's "nothing [he] can do now or in the future to change the circumstances" of his original criminal offense, he submits, his ability under the Statute to annually petition the court for reconsideration of his status is rendered meaningless. Reply in Support of Trans. at 3.

The State argues that Wilson received an opportunity for meaningful review of his SVP designation given the trial court's consideration of his verified petition and supporting exhibits, his chance to present further evidence at the motion-to-correct-error hearing, and the prospect for him to make his case again in a year's time. Appellee's Br. at 9. That the "trial court did not appoint two experts and initially hold a hearing on his petition," the State submits, "did not deny him that meaningful opportunity." *Id.*

# I. The Statute poses no ex post facto violation as applied to Wilson.

Under Article 1, Section 24 of the Indiana Constitution, "No *ex post facto* law . . . shall ever be passed." This safeguard prohibits the General Assembly from enacting any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Jensen v. State*, 905 N.E.2d 384, 389 (Ind. 2009) (internal citation and quotation marks omitted).

In analyzing an as-applied challenge, Indiana courts follow the "intent-effects" test. *Wallace v. State*, 905 N.E.2d 371, 378 (Ind. 2009). Under this test, we first determine whether the legislature intended for the statute to impose punishment or whether it merely intended to establish a non-punitive regulatory scheme. *Id.* If the latter, we must determine whether the scheme is so punitive that it effectively amounts to a criminal penalty. *Id.* This second line of inquiry follows the seven-factor test set forth in *Kennedy v. Mendoza-Martinez. Id.* at 379 (citing 372 U.S. 144 (1963)).[2] Proceeding on the assumption that the SVP Statute embodies a non-punitive regulatory scheme, the parties here agree that this case turns on the seventh *Mendoza-Martinez* factor, which asks whether the effects of the statute appear excessive in relation to the alternative purpose assigned. Appellant's Br. at 17; Appellee's Br. at 12. (We refer to this factor as the "excessiveness factor.") Following the parties' lead, we limit our analysis accordingly.

---

[2] These factors ask whether (1) the sanction involves an affirmative disability or restraint; (2) the sanction has historically been considered a punishment; (3) the statute applies only on a finding of scienter; (4) the statute promotes the traditional aims of punishment, namely retribution and deterrence; (5) the behavior to which the statute applies is criminal; (6) the statute advances an alternative, non-punitive purpose; and (7) the statute appears excessive in relation to its articulated purpose. *Gonzalez v. State*, 980 N.E.2d 312, 317–19 (Ind. 2013).

## A. The *opportunity* for meaningful review renders the Statute's effects non-punitive.

Wilson relies on three principal cases—*Jenson v. State*, *Lemmon v. Harris*, and *Gonzalez v. State*—to support his claim that retroactive application of the SVP Statute withstands constitutional scrutiny *only* when offenders like him receive a meaningful opportunity to challenge their status. Pet. to Trans. at 9–13.

The offenders in *Jensen* and *Lemmon* faced circumstances similar to Wilson's: both pled guilty to felony charges of child molesting, both faced a ten-year requirement to register as sex offenders upon release from prison, and both subsequently registered as SVPs for life following the statutory amendments in 2006 and 2007. *Jensen*, 905 N.E.2d at 388–89; *Lemmon*, 949 N.E.2d at 804–05. In analyzing the offender's ex post facto claim, the *Jensen* Court gave "considerable weight" to the excessiveness factor, focusing on the effects of the lifetime-registration requirement. 905 N.E.2d at 394 (quoting *Wallace*, 905 N.E.2d at 383). The Court observed that ex post facto challenges to similar statutes in other jurisdictions typically fail when an "individualized finding of future dangerousness was made." *Id.* (quoting *Wallace*, 905 N.E.2d at 383). Given the annual availability of such an assessment in Indiana, the Court deemed the effects of the Statute non-punitive. *Id.* The Court relied on similar reasoning in *Lemmon* to reach the same conclusion. By requiring lifetime registration for "only those people who present a future threat," the Court explained, the SVP Statute "advances" its "legitimate regulatory purpose of public safety." 949 N.E.2d at 813. And because it allows for an annual "individualized determination" based on an SVP's "likelihood to reoffend," the Court concluded, the Statute aligns with its non-punitive purposes. *Id.*

The Court in *Gonzalez* reached a different result, holding that, as applied to the offender there, the retroactive imposition of a lifetime-registration period violated the Indiana Constitution's ex post facto clause. 980 N.E.2d 312, 315 (Ind. 2013). Because this registration requirement arose under code subsection 11-8-8-19(c), the offender in that case—unlike the offenders in *Jensen* and *Lemmon*—didn't qualify as an SVP, thus

depriving him of a statutory "channel through which [to] petition the trial court for review of his future dangerousness or complete rehabilitation." *Id.* at 320. While SVPs may petition the court annually for reconsideration of their lifetime-registration requirement, non-SVPs enjoyed no similar opportunity to file "repeated requests for review" based on ex post facto challenges. *Id.* at 320–21 n.7. Rather, non-SVPs could petition for relief only if an "ameliorative change" in the law applied to the "offender's prior conduct." *Id.* at 321. Thus, the Court concluded, retroactive imposition of the registration requirement appeared "excessive in relation to the purpose of protecting the public from repeat sexual crime offenders." *Id.*

In arguing that the absence of meaningful review resulted in the unconstitutional application of the SVP Statute, Wilson analogizes his circumstances to those of the defendant in *Gonzalez*. We disagree. The circumstances in that case are clearly distinguishable and, thus, inapt. Unlike the defendant in *Gonzalez*, Wilson—an SVP—*can* petition the trial court annually for reconsideration of his status. And because the SVP Statute allows for an "individualized determination" based on Wilson's "likelihood to reoffend," we deem the effects of the Statute non-punitive as applied to him. *See Lemmon*, 949 N.E.2d at 813.

## B. Nothing in the record suggests the trial court relied solely on the "unchanging circumstances" of Wilson's "decades-old offense."

Still, Wilson latches on to the trial court's statement that, in denying his motion to correct error, it had reviewed his original "criminal case file." *See* Tr., p. 7. According to Wilson, the "trial court's denial of [his] petition was based on the unchanging circumstances of his decades-old offense, not his current risk, rendering the review disconnected from his future dangerousness." Appellant's Reply Br. at 4–5. When the "court's focus remains fixed on static historical facts," he insists, the ability to petition the court annually offers him "no relief." *Id.* at 5. In essence, Wilson's ex post facto claim challenges the trial court's implementation of an otherwise civil statute in a punitive manner.

To begin with, we question the propriety of such a challenge. As our concurring colleague Justice Slaughter points out, the outcome of the intent-effects test under federal law depends on "what the statute says" rather than "how authorities implement the disputed statute." *Post*, at 2 (Slaughter, J., concurring in part and in the judgment) (citing *Seling v. Young*, 531 U.S. 250, 261 (2001)). *See also Mendoza-Martinez*, 372 U.S. at 169 (declaring that, absent legislative intent to impose a criminal sanction, the seven-factor test "must be considered in relation to the *statute on its face*") (emphasis added). Although our analysis under the intent-effects test is "independent from that of the federal standard," *Gonzalez*, 980 N.E.2d at 316 n.3, the analytical framework itself is the "same," *Hevner v. State*, 919 N.E.2d 109, 111 (Ind. 2010). And according to that framework, it's the "*availability* of meaningful review," not necessarily whether the offender actually received meaningful review, that determines whether "retroactive application" of the relevant statute "*appears* excessive in relation to the alternative purpose assigned." *Gonzalez*, 980 N.E.2d at 320 (emphases added in part and omitted in part) (citing *Mendoza-Martinez*).

Even if we were to recognize implementation-based challenges,[3] we find nothing in the record to support Wilson's arguments. Just because the trial court stated explicitly that it had reviewed the original "criminal case file," it doesn't necessarily follow that the court relied *exclusively* on the circumstances of his original criminal offense—or that it ignored the evidence of rehabilitation that he presented—in denying his petition for reevaluation. To the contrary, the language used by the trial judge suggests that he considered *both* the original criminal case file *and* the

---

[3] In contrast to the language quoted above from *Gonzalez*, language in other cases arguably supports the view that an ex post facto challenge may turn on the manner of implementation. In *Jensen* and *Wallace*, for example, this Court cited favorably cases from "those jurisdictions that have rejected ex post facto challenges" when "an individualized finding of future dangerousness *was made*." *Jensen v. State*, 905 N.E.2d 384, 394 (Ind. 2009) (citing *Wallace v. State*, 905 N.E.2d 371, 383 (Ind. 2009)) (emphasis added). Rather than resolve this apparent tension here, we leave for another day the question of whether our analysis is confined to the "effects apparent upon the face of the statute" or whether it may consider the effects on the individual offender. *See post*, at 2 (internal citation, quotation marks, and bold emphasis omitted).

evidence of Wilson's purported rehabilitation, leaving the judge "firmly convinced" that Wilson "was *still* a danger and should be on the registry." Tr., pp. 7, 9 (emphasis added). The court's use of the adverb "still" indicates a comparison of Wilson's circumstances at the time he committed the offense up "to the present time" or as "continuing into the present." *See Still*, Webster's 3d New Int'l Dictionary 2243 (Phillip Babcock Gove et al. eds., 2002); *Still*, Britannica Dictionary, https://www.britannica.com/dictionary/still (last visited June 15, 2026).

As the State points out, the facts surrounding his original offense "were relevant because the trial court could consider what factors may have influenced his behavior and whether remedial measures addressed those factors." Appellee's Br. at 14. In other words, rather than "rendering the review disconnected from his future dangerousness," as Wilson insists, the historical record of his offense, when measured against evidence of his rehabilitation since his conviction, gave the court an opportunity to assess how far Wilson had progressed. For example, Wilson was drunk when he molested his niece and he admitted to having had a drinking problem at the time. The record also reveals that, despite the victim making several attempts to stop him, Wilson persisted in his actions. And while admitting to police that he committed the offense, Wilson consistently deflected blame, going so far as to insist that the victim "kind of came on to [him]" and that he simply "accepted." App. Vol. 2, p. 143.

The evidence offered in Wilson's petition fails to address *any* of these underlying issues. There is no indication that he has overcome his drinking problem or aggressive behavior. The fact that he's held down a job for twenty-plus years and was never prosecuted for failing to register merely shows that he can manage his responsibilities effectively. And while his employer attested to Wilson having been transparent about his criminal history, the letter—stating vaguely that Wilson has been "very forthcoming with information regarding his past legal issues"—makes no indication of what, exactly, Wilson has been transparent about. *See id.* at 162. For all we know, Wilson may be shading the facts of the offense—and perhaps even still deflecting blame—to engender sympathy from his employer. Finally, although Wilson may have successfully completed sex-

offender therapy "years ago," he offered no further details of the rehabilitative efforts this therapy required.

In short, nothing in the record suggests the trial court relied solely on the "unchanging circumstances" of Wilson's "decades-old offense" that would render meaningless the opportunity for annual reconsideration of his SVP status going forward.

## II. When considering a petition for removal of SVP status, trial courts should exercise their discretion carefully to ensure meaningful review.

To reiterate, a trial court has two options when presented with a petition for removal of SVP status: it "may dismiss" the petition, or it may appoint experts to evaluate the person and testify at a hearing to the SVP's likelihood of reoffending. I.C § 35-38-1-7.5(g). The SVP Statute, however, offers no standard to guide the trial court in exercising its discretion. Although our precedent makes clear that the Statute survives an ex post facto challenge because it ensures "meaningful review of an offender's future dangerousness," *Gonzalez*, 980 N.E.2d at 320, the availability of such review would be illusory if, as the Statute suggests, a trial court could summarily dismiss for *any* reason. So, while we find no ex post facto violation here, we take up Wilson's request to elaborate on the significance of "meaningful review" to avoid an unconstitutional application of the Statute. *See* Pet. to Trans. at 13.

We first observe that meaningful review of an SVP's likelihood of reoffending need not always depend on expert evaluation. *Cf. Scott v. State*, 895 N.E.2d 369, 376 (Ind. Ct. App. 2008) (holding that, despite lack of expert unanimity over defendant's likeliness to reoffend, sufficient evidence supported the trial court's initial SVP finding based in part on the defendant's "multiple sex-related convictions" and "lack of remorse for his crimes"). Indeed, Wilson himself acknowledges as much. *See* Pet. to Trans. at 14–15 (recognizing that a trial court's designation of an offender as an SVP, even "after hearing evidence and expert testimony," suffices for meaningful review, so long as there's "an opportunity the next year"

to petition the court again). So, we agree with the State that a trial court's independent assessment of an "SVP's rehabilitative efforts without an evaluation and testimony from court-appointed experts" may suffice for meaningful review. Opp. to Trans. at 9–10.

For example, cumulative evidence of an offender's likeliness to reoffend—*e.g.,* multiple convictions for SVP-qualifying offenses, the offender's lack of remorse, or evidence of the offender's "failure to grasp how her behavior impact[ed] her victims"—diminishes the need for expert evaluation and testimony. *See Williams v. State*, 895 N.E.2d 377, 386 (Ind. Ct. App. 2008). So, too, does an offender's "blanket statement that he needs an expert without some specific showing of what that expert would provide for the defendant." *Scott v. State*, 593 N.E.2d 198, 200 (Ind. 1992). In circumstances like these, there is little risk of denying the offender meaningful review of his petition. And requiring the trial court to appoint testifying experts in *every* case runs counter to the State's "compelling interest in ensuring that public funds are not spent needlessly, wastefully or extravagantly." *Beauchamp v. State,* 788 N.E.2d 881, 886 (Ind. Ct. App. 2003).

On the other hand, the risk of denying meaningful review reaches its apex when the evidence casts serious doubt over the offender's likeliness to reoffend. Thus, when the offender makes a prima facie showing that he no longer "suffers from a mental abnormality or personality disorder" that makes him "likely to repeatedly commit a sex offense," the offender is entitled to a hearing at which the court-appointed experts should testify. I.C §§ 35-38-1-7.5(a), (g). The lingering question, of course, is how "likely" must one be to reoffend to justify an extension of his or her SVP classification?

We find guidance from the Court of Appeals' decision in *Scott v. State*, 895 N.E.2d 369 (Ind. Ct. App. 2008). The appellate court in that case articulated a standard for reviewing sufficiency claims challenging a trial court's initial SVP finding—*i.e.,* a finding that the individual is "*likely* to repeatedly commit [a] sex offense." *Id.* at 375 (emphasis added and internal quotation marks omitted). Drawing on precedent from California, the panel held that, "in Indiana, a person is 'likely' to reoffend for

purposes of the SVP statute if, because of a mental abnormality or personality disorder, the person presents a substantial danger, that is, a serious and well-founded risk, that he or she will commit" an SVP-qualifying sex offense "in the future." *Id.* at 376 (citing *People v. Superior Court (Ghilotti)*, 44 P.3d 949, 971 (Cal. 2002)). In so holding, the panel declined to read into the Statute "a 'more likely than not' or precise mathematical standard," as the defendant there had urged. *Id.*[4]

Incorporating the more precise language from *Scott*, we set forth the following rule: A trial court should set a hearing, upon the offender's request, at which the court-appointed experts testify to their evaluations when the offender makes a prima facie showing that he no longer "suffers from a mental abnormality or personality disorder" that "presents a substantial danger, that is, a serious and well-founded risk," that he will recidivate by committing an SVP-qualifying sex offense. An offender can meet this threshold showing by tendering an expert affidavit of his own or, as the State proposes, by submitting detailed "records from his previous sex offender counseling, which would be in the nature of expert testimony," as evidence of "previous rehabilitative efforts" having succeeded in containing the offender's propensity to recidivate. *See* Appellee's Br. at 16.

Here, Wilson may have successfully completed sex-offender therapy "years ago," *see* App. Vol. 2, p. 159, but, as noted above, he offered no further details of the rehabilitative efforts this therapy entailed, let alone whether those efforts succeeded in containing his propensity to recidivate. Thus, the trial court did not abuse its discretion in denying his request to appoint experts to testify at an evidentiary hearing. However, if Wilson, at his next opportunity to petition for removal of his SVP status, can supplement his petition with records showing his previous rehabilitative efforts succeeded in containing his propensity to recidivate, we see no

---

[4] Of course, the procedural posture in which the *Scott* standard arose—a sufficiency claim challenging the trial court's initial SVP finding—differs from the procedural posture here—a petition for reconsideration and removal of SVP status. But the "likely" to reoffend standard applies in both contexts. Ind. Code §§ 35-38-1-7.5(a), (e), (g).

reason why the trial court should deny his request for the appointment of experts and a hearing.

# Conclusion

For the reasons above, we affirm the trial court's denial of Wilson's petition for removal of his SVP status and its denial of his motion to correct error.

Rush, C.J., and Molter, J., concur.
Slaughter, J., concurs in part and in the judgment with separate opinion in which Massa, J., joins.

ATTORNEY FOR APPELLANT
Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE
Theodore E. Rokita
Attorney General of Indiana

Caroline G. Templeton
Daylon L. Welliver
Deputy Attorneys General
Indianapolis, Indiana

## Slaughter, J., concurring in part and in the judgment.

I write separately to make two points. I agree with the Court that the Serious Violent Predator, or SVP, statute does not pose an ex-post-facto violation. But I disagree with the Court's new rule, which imposes additional duties on trial courts that the legislature did not contemplate, and the ex-post-facto clause does not require.

I

Indiana has adopted the federal "intent-effects test" from *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963), to handle ex-post-facto claims under Article 1, Section 24 of our state constitution. *Wallace v. State*, 905 N.E.2d 371, 378 (Ind. 2009). This test uses two prongs to determine whether a given statute imposes unlawful punishment. The first prong focuses on legislative intent: "whether the Legislature intended the Act to be a regulatory scheme that is civil and non-punitive." *Id.* at 379. This prong asks, in other words, whether the legislature intends the Act to be punitive. If it does, then courts will treat it as punitive, and that ends the matter. But if the legislature does not intend the Act to be punitive, then courts will consider seven factors to assess whether, despite a contrary legislative intent, the Act is nevertheless punitive in its effects. *Ibid*.

The Court correctly applies this test to the SVP statute. As the Court explains, the "**opportunity** for meaningful review" under the statute secures its constitutionality. *Ante*, at 7 (emphasis in original). The statute allows a registrant to "petition the court to consider whether the person should no longer be considered a sexually violent predator." Ind. Code § 35-38-1-7.5(g). We upheld this framework in *Lemmon v. Harris*, 949 N.E.2d 803 (Ind. 2011), concluding there was no ex-post-facto violation because a registrant "can petition the court" for a review of his SVP status. *Id.* at 813.

The interesting feature of this case is not how the Court resolves these straightforward questions, but how Marty Wilson urges us to apply the intent-effects test. He argues the SVP statute, applied to him, is unconstitutional because the trial court's implementation of the statute made meaningful review illusory and thus rendered the statute punitive. Wilson misunderstands the intent-effects test.

The outcome of the intent-effects test does not turn on who the defendant is or how authorities implement the disputed statute. "The civil nature of a [statute] cannot be altered based merely on vagaries in the implementation of the authorizing statute." *Seling v. Young*, 531 U.S. 250, 263 (2001). The statute's nature—and hence the outcome of the intent-effects test—depends on what the statute says, not how it is applied. The statute's effects, in other words, are based on "effects apparent upon the face of the statute." *Id.* at 269 (Scalia, J., concurring). I agree and see no reason to "leave for another day" whether our ex-post-facto precedent "recognize[s] implementation-based challenges". *Ante*, at 9, 9 n.3. I would answer that question today and hold it does not.

Here, Wilson is not alleging that the face of the statute results in a punitive effect. He is alleging, rather, that the "only" way he could receive meaningful review is for the trial court to "appoint[] two experts to evaluate his risk of reoffending and to hold a hearing to allow Wilson to present evidence demonstrating his complete rehabilitation." Because the statute gives trial courts discretion over whether to appoint experts and hold a hearing at all, I.C. § 35-38-1-7.5(g), Wilson in roundabout fashion challenges how the trial court implemented the statute. Yet the statute does not require what Wilson seeks. And the trial court did not abuse its discretion in holding as much.

In short, Wilson fails the intent-effects test. He brings an as-applied challenge to a statute we already determined to be non-punitive. See *Lemmon*, 949 N.E.2d at 813. That is not how the intent-effects test works.

II

The Court next discusses the contours of a registrant's right to "meaningful review" of his request to shed his SVP status. The Court's announced new rule starts out well enough: That "trial courts should exercise their discretion carefully to ensure meaningful review" is uncontroversial. *Ante*, at 11. But there are two problems with this formulation here. First, Wilson did not expressly charge the trial court with abusing its discretion; he raised only an ex-post-facto claim. Second, the Court's new rule robs trial courts of their statutory discretion—a choice the legislature conferred on trial courts and is not ours to take away.

Under the statute, trial courts have broad discretion to review petitions seeking to remove a registrant's SVP status. The statute says that a court "may" either "dismiss a petition" or "conduct a hearing to determine if the person should no longer be considered a sexually violent predator." I.C. § 35-38-1-7.5(g). The legislature's instruction that a trial court "may" dismiss a petition is key. "[P]ermissive" language, like "may", typically refers to "what the court is permitted or authorized to do, or to what it might possibly do." *Spells v. State*, 225 N.E.3d 767, 776 (Ind. 2024). By instructing that a court "may dismiss a petition . . . or conduct a hearing", the legislature leaves which path to follow to a trial court's discretion. I.C. § 35-38-1-7.5(g).

Despite the statute's clear instruction that whether to hold a hearing rests with the trial court, the Court "elaborate[s]" on the proper standard of review because, the Court says, "the availability of such review would be illusory if, as the Statute suggests, a trial court could summarily dismiss for **any** reason." *Ante*, at 11 (emphasis in original). First, it is unclear what the Court means by "illusory" review. As the Court already observed, the "availability" of meaningful review in the trial court controls the ex-post-facto question here. *Id.* at 9 (quoting *Gonzalez v. State*, 980 N.E.2d 312, 320 (Ind. 2013)). Under this standard, a statute either does or does not provide meaningful review. The Court's unexplained reference to "illusory" review needlessly complicates this straightforward standard. Second, the Court sets up a strawman: Nowhere does the SVP statute say that the trial court can deny a hearing for "any" reason.

When a registrant petitions to change his SVP status, holding the statutorily described hearing is up to the trial court's discretion. A court can, to be sure, abuse its discretion in many ways. The classic formulation is that a court does so when its decision is "clearly against the logic and effect of the facts and circumstances." *Bennett v. State*, 119 N.E.3d 1057, 1058 (Ind. 2019). This is a highly deferential standard of review, which may explain why Wilson never challenged how the trial court exercised its discretion here. But a trial court's prerogative to hold a hearing at its discretion is a world away from the "illusory" review the Court invokes. *Ante,* at 11. The statute does not purport to make the court's decision to hold a hearing unreviewable.

From its unfounded fear of "illusory" review, the Court gives future SVP petitioners more than the ex-post-facto clause requires. With today's opinion, a trial court must now hold a hearing and appoint at public expense not one but two expert witnesses—"psychologists or psychiatrists who have expertise in criminal behavioral disorders", I.C. § 35-38-1-7.5(g)—anytime a petitioner makes a "prima facie showing" that he is eligible for a change in his SVP status. *Ante*, at 13. Conferring petitioners with such gold-plated hearings based on the "low bar of a mere prima facie case" goes well beyond any statutory requirement. *Grimes v. State*, 235 N.E.3d 1224, 1234 (Ind. 2024).

It would be one thing if the Court limited its new rule to the dwindling number of SVPs whose convictions, like Wilson's, predate the current lifetime registration system, which took effect in 2003. But the Court's rule is much broader; trial courts must hold a hearing whenever an SVP of any vintage "tender[s] an expert affidavit of his own" to create a prima facie case. *Ante*, at 13. If the legislature wishes to provide those seeking to change their SVP status with additional rights—at no small cost to the public fisc—that is up to the legislature. But that prerogative does not belong to us.

Because neither the ex-post-facto clause nor the SVP statute compels the Court's newly announced rule, I do not join Part II of its opinion.

*　　*　　*

For these reasons, I concur in part with the Court's opinion and concur in its judgment to affirm the denial of Wilson's petition to remove his SVP status.

Massa, J., joins.